229.    Plaintiff, Marlena Davis is a citizen of the State of Massachusetts residing at 66 Osceola Street, Mattapan, MA 02126, which is the one of the subject properties incorporated and referred to herein.

230.    Plaintiff made an application to the ASC Servicer Defendant for consideration for her mortgage to be modified under the guidelines and supplemental directives of the U.S. Treasury Department's Making Home Affordable Home Affordable Modification Program that included personal financial information, tax information, and a statement attesting to her hardship on or about July 2009.

231.    Servicer Defendant ASC's conduct was particularly egregious regarding the Davis modification request. Plaintiff's home suffered a fire in 2008 and was damaged so badly that she had to move in with her parents for a period of time while the property was being repaired so as to bee habitable. Her parents reside at, and are the owners of that property located at 211 Almont Street, Mattapan, MA 02126.

232.     Servicer Defendant ASC was so determined to hinder her attempt at modification, they continuously used the excuse that they could not verify that the Plaintiff lived in the subject property, even going so far as to deny her HAMP request, in writing, claiming that her property was vacant, and verbally claiming that she lived at 211 Almont Street (her parents home) which she had left once the fire damage had been repaired. All this in spite of numerous letters, verification proving otherwise, and an offer to allow an inspector to come and visit the property to confirm her residency. These systematic stall tactics were employed by Servicer Defendant ASC from on or about July 2009 through October 2011.

233.    During the time period of Plaintiff's request for HAMP consideration she suffered extreme emotional and mental distress as Servicer Defendant referred her to foreclosure on or about February 2011, July, 2011, August 2011, September 2011, and November 2011.

234.    On July October 17, 2011,Defendant Harmon Law, P.C. sent Plaintiff a Notice of Intention to Foreclose on behalf of Trustee Defendant Deutsche Bank stating a scheduled

auction date of November 16, 2011. At the time of the filing of this complaint, that auction date has been postponed until December 16, 2011.

235.    During the entire two years and three months since Plaintiff first applied for the HAMP program, Plaintiff was stalled by the ASC Servicer Defendant's customer service representatives, inundated with repetitive requests for the same documentation over and over again, and otherwise purposefully hindered in her modification attempts. It is upon information and belief that the ASC Servicer Defendants purposefully misled Plaintiff and hindered her modification requests in an effort to enrich themselves by ignoring her legitimate request for modification under HAMP so as to maximize servicing income and servicing expenses.

236.    The ASC and Wells Fargo Bank, N.A. Servicer Defendants' conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business by;

> a.   misrepresenting their intentions to arrange loan modifications for Plaintiff and others, while in fact purposefully creating abusive roadblocks to deprive Plaintiff and others of the opportunity to seek assistance under a federal government program Defendants publicly represented they would abide by;

> b.   deceptively misleading Plaintiff and others by publicly claiming to be a participating servicer in a federal government mortgage modification program yet purposefully ignoring guidelines and directives of said federal program, seeking instead to enrich themselves by first hindering the modification process in order to maximize the billing of servicing advances and then foreclosing (and/or facilitating short sales) on Plaintiff and others properties to make recovery of said advances in order to maximize profits, while Plaintiff and others sought, in good faith, to modify their mortgages under said federal program;

c.   engaging in intrinsic fraud by willfully, purposefully and systematically stalling Plaintiff and others legitimate requests to cancel foreclosures while actively seeking to be considered for a modification, in direct violation of guidelines and directives of aforementioned federal program;

e.   deceptively and fraudulently seeking to and/or completing foreclosures on Plaintiff and other borrower's homes while having full knowledge that no actual default under the terms of the note/deed of trust exists.

237.    The ASC Servicer Defendants' conduct as described in this complaint was willful or knowing within the meaning of Massachusetts Consumer Protection Act, G.L. c. 93A, §9.

**Lim v Wachovia Mortgage and Wells Fargo Bank, N.A.**

238.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

239.    Plaintiff, Neang Lim is a citizen of the State of Massachusetts residing at 200 Trotting Park Road, Lowell, MA 01854, which is the one of the subject properties incorporated and referred to herein.

240.    Plaintiff made an application to the Wachovia Servicer Defendant for consideration for Plaintiff's mortgage to be modified under the guidelines and supplemental directives of the U.S. Treasury Department's Making Home Affordable Home Affordable Modification Program that included personal financial information, tax information, and a statement attesting to Plaintiff's hardship on or about May 2009.

241.    Plaintiff was determined by the Wachovia Servicer Defendant to have met the threshold requirements for HAMP, as described above, and granted a Trail Period Plain under HAMP, on or about February 14, 2011.

242.    During the entire twenty-one months since Plaintiff first applied for the HAMP program, Plaintiff was stalled by the ASC Servicer Defendant's customer service

representatives, inundated with repetitive requests for the same documentation over and over again, and otherwise purposefully hindered in her modification attempts. It is upon information and belief that the Wachovia Servicer Defendant purposefully misled Plaintiff and hindered Plaintiff's modification requests in an effort to enrich themselves by ignoring her legitimate request for modification under HAMP so as to maximize servicing income and servicing expenses.

243.    The Wachovia Servicer Defendant conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business by;

        a.   misrepresenting their intentions to arrange loan modifications for Plaintiff and others, while in fact purposefully creating abusive roadblocks to deprive Plaintiff and others of the opportunity to seek assistance under a federal government program Defendants publicly represented they would abide by;

        b.   deceptively misleading Plaintiff and others by publicly claiming to be a participating servicer in a federal government mortgage modification program yet purposefully ignoring guidelines and directives of said federal program, seeking instead to enrich themselves by first hindering the modification process in order to maximize the billing of servicing advances and then foreclosing (and/or facilitating short sales) on Plaintiff and others properties to make recovery of said advances in order to maximize profits, while Plaintiff and others sought, in good faith, to modify their mortgages under said federal program.

Wachovia and Wells Fargo Bank, N.A. Servicer Defendants' conduct as described in this complaint was willful or knowing within the meaning of Massachusetts Consumer Protection Act, G.L. c. 93A, §9.

**Rom v Wachovia Mortgage and Wells Fargo, Bank, N.A.**

244.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

245.    Plaintiff, Saroeun Rom is a citizen of the State of Massachusetts residing at 819 Chelmsford Street, Lowell, MA 01851, which is the one of the subject properties incorporated and referred to herein.

246.    Plaintiff made an application to the Wachovia Servicer Defendant for consideration for Plaintiff's mortgage to be modified under the guidelines and supplemental directives of the U.S. Treasury Department's Making Home Affordable Home Affordable Modification Program that included personal financial information, tax information, and a statement attesting to Plaintiff's hardship on or about November 2009.

247.    Plaintiff was denied a HAMP modification and upon information and belief said denial was without due cause. Plaintiff was approved for an "in house" modification on or about October 14, 2010.

248.    During the entire eleven months since Plaintiff first applied for the HAMP program, Plaintiff was stalled by the ASC Servicer Defendant's customer service representatives, inundated with repetitive requests for the same documentation over and over again, and otherwise purposefully hindered in Plaintiff's modification attempts. It is upon information and belief that the Wachovia Servicer Defendant purposefully misled Plaintiff and hindered Plaintiff's modification requests in an effort to enrich themselves by ignoring Plaintiff's legitimate request for modification under HAMP so as to maximize servicing income and servicing expenses.

249.    The Wachovia Servicer Defendant conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business by;

      a.   misrepresenting their intentions to arrange loan modifications for Plaintiff and others, while in fact purposefully creating abusive roadblocks to deprive

Plaintiff and others of the opportunity to seek assistance under a federal government program Defendants publicly represented they would abide by;

b.   deceptively misleading Plaintiff and others by publicly claiming to be a participating servicer in a federal government mortgage modification program yet purposefully ignoring guidelines and directives of said federal program, seeking instead to enrich themselves by first hindering the modification process in order to maximize the billing of servicing advances and then foreclosing (and/or facilitating short sales) on Plaintiff and others properties to make recovery of said advances in order to maximize profits, while Plaintiff and others sought, in good faith, to modify their mortgages under said federal program;

Wachovia and Wells Fargo Bank, N.A. Servicer Defendants' conduct as described in this complaint was willful or knowing within the meaning of Massachusetts Consumer Protection Act, G.L. c. 93A, §9.

**Kolap Im v Barclays Capital Real Estate, Inc. d/b/a/ HomEq Servicing**

250.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

251.     Plaintiff, Kolap Im is a citizen of the State of Massachusetts residing at 21 Hillside Street, Lowell, MA 01851, which is the one of the subject properties incorporated and referred to herein.

252.     Plaintiff made an application to the HomEq Servicer Defendant for consideration for Plaintiff's mortgage to be modified under the guidelines and supplemental directives of the U.S. Treasury Department's Making Home Affordable Home Affordable Modification Program that included personal financial information, tax information, and a statement attesting to Plaintiff's hardship on or about April 2009.

253.    Plaintiff was determined by the HomEq Servicer Defendant to have met the threshold requirements for HAMP, as described above, and granted a Trail Period Plain under HAMP, on or about June 1, 2010.

254.    During the time period of Plaintiff's request for HAMP consideration she suffered extreme emotional and mental distress as Servicer Defendant referred her to foreclosure on or about October 20, 2009.

255.    On October 20, 2009, Defendant Doonan, Graves & Longoria, LLC. sent Plaintiff a Notice of Intention to Foreclose on behalf of Trustee Defendant U.S. Bank National Association Bank stating a scheduled auction date of November 6, 2009. Additional auction dates were also set for on or about March 25, 2010, and May 25, 2010.

256.    During the entire fourteen months since Plaintiff first applied for the HAMP program, Plaintiff was stalled by the HomEq Servicer Defendant's customer service representatives, inundated with repetitive requests for the same documentation over and over again, and otherwise purposefully hindered in Plaintiff's modification attempts. It is upon information and belief that the HomEq Servicer Defendant purposefully misled Plaintiff and hindered Plaintiff's modification requests in an effort to enrich themselves by ignoring Plaintiff's legitimate request for modification under HAMP so as to maximize servicing income and servicing expenses.

257.    The HomEq Servicer Defendant conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business by;

        a.   misrepresenting their intentions to arrange loan modifications for Plaintiff and others, while in fact purposefully creating abusive roadblocks to deprive Plaintiff and others of the opportunity to seek assistance under a federal government program Defendants publicly represented they would abide by;

b.   deceptively misleading Plaintiff and others by publicly claiming to be a

participating servicer in a federal government mortgage modification program

yet purposefully ignoring guidelines and directives of said federal program,

seeking instead to enrich themselves by first hindering the modification

process in order to maximize the billing of servicing advances and then

foreclosing (and/or facilitating short sales) on Plaintiff and others properties to

make recovery of said advances in order to maximize profits, while Plaintiff

and others sought, in good faith, to modify their mortgages under said federal

program;

The HomEq Servicer Defendant's conduct as described in this complaint was willful or

knowing.

**Vandy & Daovanney Duch v Taylor Bean & Whitaker Mortgage Corp., and Ocwen Loan Servicing, LLC**

258.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

259.    Plaintiffs, Vandy & Daovanney Duch are citizens of the State of Massachusetts

residing at 335 Walker Street, Lowell, MA 01851, which is the one of the subject properties

incorporated and referred to herein.

260.    Plaintiffs made an application to the Taylor Bean & Whitaker Servicer Defendant for

consideration for Plaintiffs' mortgage to be modified under the guidelines and supplemental

directives of the U.S. Treasury Department's Making Home Affordable Home Affordable

Modification Program that included personal financial information, tax information, and a

statement attesting to Plaintiffs' hardship on or about August 2009.

261.    Plaintiffs made another application to the Ocwen Servicer Defendant for consideration

for Plaintiffs' mortgage to be modified under the guidelines and supplemental directives of the

U.S. Treasury Department's Making Home Affordable Home Affordable Modification

Program that included personal financial information, tax information, and a statement

attesting to Plaintiffs' hardship on or about March 2010, after the servicing rights to Plaintiffs' mortgage had been sold to the Ocwen Servicer Defendant.

262.     During the time period of Plaintiffs' request for HAMP consideration they suffered extreme emotional and mental distress as both Servicer Defendants referred them to foreclosure on or about October 2009, February 2010, April 2010, and May 2010.

263.     On or about September 1, 2009, Defendant Orlans Moran, PLLC. sent Plaintiffs a Notice of Intention to Foreclose on behalf of Taylor Bean & Whittaker stating a scheduled auction date of October 29, 2009.

264.     Plaintiffs were granted an "in house" modification by Ocwen on or about July 2010, after Ocwen had determined that Plaintiffs did not qualify for the HAMP Program. It is upon information and belief that the Plaintiffs' request for a HAMP modification was denied without due cause.

265.     During the entire ten months since Plaintiffs first applied for the HAMP program, Plaintiffs were stalled by the Taylor Bean & Whitaker and Ocwen Defendant's customer service representatives, inundated with repetitive requests for the same documentation over and over again, and otherwise purposefully hindered in Plaintiffs' modification attempts. It is upon information and belief that the Taylor Bean & Whitaker and Ocwen Servicer Defendants purposefully misled Plaintiffs and hindered Plaintiffs' modification requests in an effort to enrich themselves by ignoring Plaintiffs' legitimate request for modification under HAMP so as to maximize servicing income and servicing expenses.

266.     The Taylor Bean & Whitaker and Ocwen Servicer Defendants conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business by;

        a.   misrepresenting their intentions to arrange loan modifications for Plaintiffs and others, while in fact purposefully creating abusive roadblocks to deprive Plaintiffs and others of the opportunity to seek assistance under a federal government program Defendants publicly represented they would abide by;

b.  deceptively misleading Plaintiffs and others by publicly claiming to be a
participating servicer in a federal government mortgage modification program
yet purposefully ignoring guidelines and directives of said federal program,
seeking instead to enrich themselves by first hindering the modification
process in order to maximize the billing of servicing advances and then
foreclosing (and/or facilitating short sales) on Plaintiffs and others properties
to make recovery of said advances in order to maximize profits, while
Plaintiffs and others sought, in good faith, to modify their mortgages under
said federal program;

The Taylor Bean & Whitaker and Ocwen Servicer Defendants conduct as described in this
complaint was willful and knowing.

**Susan Sorsby v JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC**

267.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

268.    Plaintiff, Susan Sorsby is a citizen of the State of Massachusetts residing at 2 Fremont
Road, Marshfield, MA 02050, which is the one of the subject properties incorporated and
referred to herein.

269.    Plaintiff made an application to the Chase Home Finance Servicer Defendant for
consideration for her mortgage to be modified under the guidelines and supplemental
directives of the U.S. Treasury Department's Making Home Affordable Home Affordable
Modification Program that included personal financial information, tax information, and a
statement attesting to Plaintiff's hardship on or about March 2010.

270.    During the time period of Plaintiff's request for HAMP consideration she suffered
extreme emotional and mental distress as the Chase Servicer Defendants and Defendant
Harmon Law set foreclosure auction dates on behalf of JPMorgan Chase for on or about July
30, 2010, October 29, 2010, and September 7, 2011. As of the date of this filing the Plaintiff

is still under the threat of foreclosure. All of the aforementioned Defendants' conduct is particularly egregious due to the fact that Plaintiff had been granted a permanent modification, by Defendants JPMorgan Chase effective October 1, 2010..

271.    Plaintiff was granted what she was told by Chase Home Finance was a FNMA modification on or about September 2010, after Chase Home Finance had determined that Plaintiff did not qualify for the HAMP Program. It is upon information and belief that the Plaintiff's request for a HAMP modification was denied without due cause.

272.    During the entire six months since Plaintiff first applied for the HAMP program, Plaintiff was stalled by the Chase Home Fianance Defendant's customer service representatives, inundated with repetitive requests for the same documentation over and over again, and otherwise purposefully hindered in Plaintiff's modification attempts. It is upon information and belief that the Chase Home Finance Servicer Defendants purposefully misled Plaintiff and hindered Plaintiff's modification requests in an effort to enrich themselves by ignoring Plaintiff's legitimate request for modification under HAMP so as to maximize servicing income and servicing expenses.

273.    The Chase Defendants conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business by;

> a.   misrepresenting their intentions to arrange loan modifications for Plaintiffs and others, while in fact purposefully creating abusive roadblocks to deprive Plaintiffs and others of the opportunity to seek assistance under a federal government program Defendants publicly represented they would abide by;

> b.   deceptively misleading Plaintiffs and others by publicly claiming to be a participating servicer in a federal government mortgage modification program yet purposefully ignoring guidelines and directives of said federal program, seeking instead to enrich themselves by first hindering the modification

process in order to maximize the billing of servicing advances and then

foreclosing (and/or facilitating short sales) on Plaintiffs and others properties

to make recovery of said advances in order to maximize profits, while

Plaintiffs and others sought, in good faith, to modify their mortgages under

said federal program;

The Chase Servicer Defendants conduct as described in this complaint was willful and

knowing within the meaning of Massachusetts Consumer Protection Act, G.L. c. 93A, §9.

**Chantha Oum v American Home Mortgage Servicing, Inc./AHMSI**

274.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

275.    Plaintiff, Chantha Oum is a citizen of the State of Massachusetts residing 18 Bourne

Street, Lowell, MA 001852, which is the one of the subject properties incorporated and

referred to herein.

276.    Plaintiff made an application to the AHMSI Servicer Defendant for consideration for

her mortgage to be modified under the guidelines and supplemental directives of the U.S.

Treasury Department's Making Home Affordable Home Affordable Modification Program

that included personal financial information, tax information, and a statement attesting to

Plaintiff's hardship on or about March 2010.

277.    During the time period of Plaintiff's request for HAMP consideration she suffered

extreme emotional and mental distress as the AHMSI Servicer Defendant and Defendant

Ablitt Scofield began foreclosure action, on behalf of Wells Fargo Bank, N.A., as Trustee for

the Option One Mortgage Loan Trust 2007-2, beginning with a Service members' Relief Act

Complaint and Order of Notice with the Middlesex County Land Court asking for "authority

to foreclose" on the Property on behalf of Wells Fargo as Trustee for Option One Mortgage

Loan Trust 2007-2, through its attorney Ablitt Scofiled, on or about September 1, 2010.

278.    Plaintiff was never granted a HAMP Modification and was not informed of any denial

of her application either verbally or in writing. Should her HAMP modification request have

been denied, it is upon information and belief that the Plaintiff's request for a HAMP modification was denied without due cause.

279.    During the entire nine months since Plaintiff first applied for the HAMP program, Plaintiff was stalled by the AHMSI Defendant's customer service representatives, inundated with repetitive requests for the same documentation over and over again, and otherwise purposefully hindered in Plaintiff's modification attempts. It is upon information and belief that the AHMSI Servicer Defendants purposefully misled Plaintiff and hindered Plaintiff's modification requests in an effort to enrich themselves by ignoring Plaintiff's legitimate request for modification under HAMP so as to maximize servicing income and servicing expenses.

280.    The AHMSI Defendants conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business by;

      a.   misrepresenting their intentions to arrange loan modifications for Plaintiffs and others, while in fact purposefully creating abusive roadblocks to deprive Plaintiffs and others of the opportunity to seek assistance under a federal government program Defendants publicly represented they would abide by;

      b.   deceptivelly misleading Plaintiffs and others by publicly claiming to be a participating servicer in a federal government mortgage modification program yet purposefully ignoring guidelines and directives of said federal program, seeking instead to enrich themselves by first hindering the modification process in order to maximize the billing of servicing advances and then foreclosing (and/or facilitating short sales) on Plaintiffs and others properties to make recovery of said advances in order to maximize profits, while Plaintiffs and others sought, in good faith, to modify their mortgages under said federal program;

281. The AHMSI Servicer Defendants conduct as described in this complaint was willful and knowing.

### The Servicer Defendants' Actions Caused Injury to Plaintiffs

282. Plaintiffs have suffered injury caused by the Servicer Defendants' actions, including but not limited to, improper negative reporting to credit bureaus, monetary damages from higher principle balances, inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

283. Moreover, whenever the Servicer Defendants delay the tender of a timely review of a modification request, TPP agreement and/or permanent HAMP modification the terms of such a modification are less beneficial to the homeowner than they otherwise would be had the Servicer Defendants properly performed. If a class member has accepted a modification on terms that are less favorable than those of a HAMP-compliant modification offered at the close of their trial period, their injury is measured by the difference between the modification they accepted and the modification they were entitled to. If an eligible homeowner has not been tendered a permanent modification, their injury is measured by the difference between their current circumstances and the terms of the modification that they were entitled to – a difference that includes the wrongful loss of a property interest for those who have suffered foreclosure. If an eligible homeowner has been serially strung along in violation of HAMP Guidelines, then their injury is measured by the difference between their current circumstances and the terms of a modification to which they were entitled. Further, if an eligible homeowner has been foreclosed upon during the modification process, in violation of HAMP Guidelines and Supplemental Directives, then the Plaintiffs' are entitled to the return of said property and/or any value of same and/or costs arising from said foreclosure.

284. The Servicer Defendants' behavior has also left class members in limbo, wondering if their homes can be saved and preventing homeowners from pursuing other avenues of

resolution, including using the money they are putting toward trial period-level payments to fund bankruptcy plans, relocation costs, short sales or other means of curing their default.

285.    Plaintiffs have been damaged because they has now are being or have been foreclosed upon, may have suffered the loss of rightful property, and have incurred the costs of legal fees associated with foreclosure and eviction defense and in some cases made rental payments to the purported new owner of their rightful property.

286.    Furthermore, the Plaintiffs owe far more money on their loans than they would have had the Servicer Defendants not fraudulently, misleadingly and deceptively represented to the public and to the borrowers of the mortgages it holds and/or services that it would follow the guidelines and supplemental directives of HAMP.

287.    Furthermore, Plaintiffs have suffered significant stress and emotional distress as a direct result of the Servicer Defendants' actions. Said damages are representative of damages sustained by other members of the class.

### FNMA and the Trustee Defendants Attempt and/or Complete Foreclosure when No Default Exists to Note-Holder/Owner of Mortgage

**Heang Ouch v OneWest Servicer Defendants, FNMA, and Harmon Law**

288.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

289.    Plaintiff Heang Ouch's first mortgage loan was serviced by the Servicer Defendants IndyMac and through acquisition of IndyMac, by OneWest Bank.

290.    On or about January 16, 2007, Plaintiff, Heang Ouch and his now estranged wife Narein Kong, purchased the property located at 43 Inland Street, Lowell, Ma 01851 in consideration of $240,000.00.

291.    On or about January 23, 2007 a Quitclaim Deed was recorded in the Middlesex County North Registry of Deeds in Book 20908, Page 264 granting the Property to Plaintiff.

292.    On January 19, 2007, Plaintiff executed a Mortgage which identified IndyMac Bank, FSB as Lender on Page 1, Paragraph D. The Mortgage Deed was recorded in the Middlesex County north Registry of Deeds in Book 20908, Page 268.

293.    Upon information and belief sometime on or about February – March, 2007, Plaintiff's mortgage was purchased by a FNMA created Trust. At that point in time, that as yet identified Trust became the true owner of the Plaintiff's mortgage and note.

294.    Sometime after the origination of Plaintiff's mortgage, he began to experience a hardship which caused him to be unable to continue to make his mortgage payments.

295.    Unknown to Plaintiff at that time, upon information and belief, the OneWest Servicer Defendants and /or FNMA,  by virtue of its guarantee, did in fact make Plaintiff's mortgage payments, on Plaintiff's behalf, as a third party servicer and/or as Master Servicer with no security interest, to the true Holder of Plaintiff's Mortgage and/or Note (said Trust), without his knowledge or consent and as such the Note referenced herein is believed to have not been in default at the time foreclosure was initiated and completed due to the servicing advances paid by the OneWest Servicer Defendants and/or FNMA, on behalf of the Plaintiff to the unknown Note Holder in due course, as is required by the FNMA Amended and Restated 2007 Single-Family Master Trust Agreement (Exhibit 11).

296.    In said Master Trust Agreement the Direct Servicer (i.e. IndyMac/OneWest) is often responsible for *"Delinquency Advances"* (Exhibit 10 *Id. at pp. 4,5)* as specified in their individual Direct Servicer Contracts with FNMA. This clause requires the Direct Servicer (or Sub-Servicer, if applicable) to advance payment on any non-performing loans.

297.    Moreover, FNMA created Trusts are given the additional assurance that if for any reason the Direct Servicer does not or is not required to forward said Delinquency Advances, FNMA guarantees that it will forward said Delinquency Advances to the Trusts it created as stated in said Master Trust Agreement (Exhibit 10 *Id. at pp. 54 Article VII through pp. 59).*

298.    Regardless of whether the OneWest Servicer Defendants or FNMA paid the Plaintiff's mortgage payments on his behalf, if the terms of said Master Trust Agreement and FNMA's

well publicized guarantee were adhered to, the Plaintiff's mortgage was paid to the true Holder of said instrument.

299.    On June 15, 2010, Trustee Defendant Harmon Law, P.C. filed a Service-members' Relief Act Complaint and Order of Notice with the Middlesex County Land Court to foreclose on the Property on behalf of One West which stated that the foreclosure sale would be held on August 10, 2010.

300.    On September 10, 2010 a Foreclosure Deed, dated August 20, 2010, was recorded in the Middlesex County Registry of Deeds in Book 24229, Page 105 purporting to grant ownership and title to the property to Federal National Mortgage Association (FNMA) for $214,363.50.

301.    The actions taken by the OneWest Servicer Defendants, FNMA, and Trustee Defendant Harmon are without any force or effect relative to the actual sale of the property because upon information and belief there existed no default regarding payment of the Note to the actual Note holder.

302.    On September 27, 2010, Trustee Defendant Harmon Law, P.C. filed a Summary Process proceeding to evict Plaintiff from the subject property referenced herein on behalf of FNMA.

303.    The Plaintiff does not dispute that his mortgage provides for the Statutory Power of Sale in the event of a default of the Note. However, upon information and belief, as the Note is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

304.    As no default of the Note existed to said, as yet unidentified, Trust, which was the lawful owner of said Mortgage and Note, the foreclosure and foreclosure proceedings were invalid.

305.     This type of action is representative of the OneWest Servicer Defendants, FNMA, and Trustee Defendant Harmon Law's behavior in all cases where foreclosure has been initiated and/or completed, on mortgage loans that were securitized and are governed by Single-Family

Master Trust Agreements of FNMA sponsored Trusts in the State of Massachusetts and nationwide.

**Susan Sorsby v JPMorgan Chase Servicer Defendant, FNMA, and Harmon Law**

306.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

307.    Plaintiff Susan Sorsby's first mortgage loan was serviced by the Servicer Defendants Washington Mutual and through acquisition of Washington Mutual, by JPMorgan Chase.

308.    On May 15, 2006, Plaintiff executed a Mortgage which identified Washington Mutual as Lender.

309.    Upon information and belief sometime on or about June -July, 2006, Plaintiff's mortgage was purchased by an as yet identified FNMA created Trust (or an as yet identified private label mortgage backed securitized Trust). At that point in time, that as yet identified Trust became the true owner of the Plaintiff's Mortgage and Note.

310.    Sometime after the origination of Plaintiff's mortgage, she began to experience a hardship which caused her to be unable to continue to make her mortgage payments.

311.    Unknown to Plaintiff at that time, upon information and belief, the JPMorgan Chase Servicer Defendant and /or FNMA,  by virtue of its guarantee, did in fact make Plaintiff's mortgage payments, on Plaintiff's behalf, as a third party servicer and/or as Master Servicer with no security interest, to the true Holder of Plaintiff's Mortgage and/or Note (said Trust), without her knowledge or consent and as such the Note referenced herein is believed to have not been in default at the time foreclosure was initiated and completed due to the servicing advances paid by the JPMorgan Chase Servicer Defendants and/or FNMA, on behalf of the Plaintiff to the unknown Note Holder in due course, as is required by the FNMA Amended and Restated 2007 Single-Family Master Trust Agreement (Exhibit 11) and/or an industry standard pooling and servicing agreement.

312.    In said Master Trust Agreement the Direct Servicer (i.e. JPMorgan Chase) is often responsible for *"Delinquency Advances"* (Exhibit 10 *Id. at pp. 4,5)* as specified in their

individual Direct Servicer Contracts with FNMA. This clause requires the Direct Servicer (or Sub-Servicer, if applicable) to advance payment on any non-performing loans.

313.    Moreover, FNMA created Trusts are given the additional assurance that if for any reason the Direct Servicer does not or is not required to forward said Delinquency Advances, FNMA guarantees that it will forward said Delinquency Advances to the Trusts it created as stated in said Master Trust Agreement (Exhibit 10 *Id. at pp. 54 Article VII through pp. 59).*

314.    Regardless of whether the JPMorgan Chase Servicer Defendants or FNMA paid the Plaintiff's mortgage payments on her behalf, if the terms of said Master Trust Agreement and FNMA's well publicized guarantee ( or the "Advance" clause contained in industry standard pooling and servicing agreements) were adhered to, the Plaintiff's mortgage was paid to the true Holder of said instrument.

315.    On March 2, 2010, Trustee Defendant Harmon Law, P.C. filed a Service-members' Relief Act Complaint and Order of Notice with the Plymouth County Land Court to foreclose on the Property on behalf of JPMorgan Chase Bank National Association, as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (the "Savings Bank"), from the Federal Deposit Insurance Corporation, acting as receiver for the Savings Bank and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d).

316.    Defendant Harmon Law set foreclosure auction dates on behalf of JPMorgan Chase for on or about July 30, 2010, October 29, 2010, September 7, 2011. As of the date of this filing the Plaintiff is still under the threat of foreclosure. All of the aforementioned Defendants' conduct is particularly egregious due to the fact that Plaintiff had been granted a permanent modification, by Defendants JPMorgan Chase effective October 1, 2010. Plaintiff has made all payment regarding the aforementioned permanent modification and is current on said obligation.

317.    The actions taken by the JPMorgan Chase Defendants, FNMA, and Trustee Defendant Harmon are without any force or effect relative to the attempted sales of the property because

upon information and belief there existed no default regarding payment of the Note to the actual Note holder.

318.    Moreover, upon information and belief, JPMorgan Chase is not the present holder of said Mortgage and/or Note, as stated in all foreclosure notices. Said Holder is in fact, upon information and belief an as yet identified FNMA Trust or an as yet identified private label securitized mortgaged backed Trust. As the records regarding who the actual Holder of Plaintiff's Mortgage and Note are in the control of Defendant JPMorgan Chase, and not properly recorded in the Plymouth County Registry of Deeds, it is only through discovery that these facts can be ascertained and determined.

319.    The Plaintiff does not dispute that her mortgage provides for the Statutory Power of Sale in the event of a default of the Note. However, upon information and belief, as the Note is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

320.    As no default of the Note existed to said, as yet unidentified, Trust, which was the lawful owner of said Mortgage and Note, the foreclosure and foreclosure proceedings are/were invalid.

321.     This type of action is representative of the JPMorgan Chase Servicer Defendants, FNMA, and Trustee Defendant Harmon Law's behavior in all cases where foreclosure has been initiated and/or completed, on mortgage loans that were securitized and are governed by private label securitized mortgage backed Trusts and/or Single-Family Master Trust Agreements of FNMA sponsored Trusts in the State of Massachusetts and nationwide.

**Dieu Troung v Wells Fargo Bank, N.A. and Harmon Law**

322.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

323.    Plaintiff Dieu Truong is a citizen of the State of Massachusetts residing at 162-164 Glendale Road, Quincy, MA 02169, which is one of the subject properties referred to herein.

324.    On or about December 22, 2004, Plaintiff Truong and his wife Elaine Dang Truong gave a mortgage to Bank of America, N.A. in the original principal amount of $350,000.00.

325.    On or about February 25, 2005, Plaintiff Truong's mortgage was pooled and sold to a Trust named Banc of America Alternative Loan Trust 2005-2 Mortgage Pass-Through Certificates Series 2005-2. Wells Fargo Bank, N.A. was appointed as Trustee of said Trust.

326.    On or about March 2010, Plaintiff Truong began to experience financial difficulty and was unable to make his mortgage payments.

327.    Upon information and belief, BAC Home Loans Servicing, LP and/or Bank of America, N.A. forwarded payment, on behalf of Plaintiff Truong, to the Note-holder of Plaintiff Truong's Note, Banc of America Alternative Loan Trust 2005-2 Mortgage Pass-Through Certificates Series 2005-2, to its Trustee, Wells Fargo Bank, N.A. as required under the pooling and servicing agreement governing Plaintiff Truong's mortgage.

328.    Upon information and belief, BAC Home Loans Servicing, LP has forwarded and continues to forward, on behalf of Plaintiff Truong, all payments not made by Plaintiff Truong to the Holder of Plaintiff Truong's Note, Banc of America Alternative Loan Trust 2005-2 Mortgage Pass-Through Certificates Series 2005-2, to its Trustee, Wells Fargo Bank, N.A. as required under the pooling and servicing agreement governing Plaintiff Truong's mortgage.

329.    On May 17, 2011, Harmon Law Offices, P.C. sent a notice to Plaintiff Truong stating that it had been retained by BAC to foreclose on Plaintiff's mortgage. This notice further states that Harmon Law P.C. has been instructed to bring foreclosure in the name of Wells Fargo Bank, N.A. as Trustee for the Certificate Holders of Banc of America Alternative Loan Trust 2005-2 Mortgage Pass-Through Certificates Series 2005-2.

330.    The aforementioned notice states that under the terms of Plaintiff Truong's Note and Mortgage, there is outstanding $324,851.19 in principal and $21,544.80 in interest and other charges for a total of $346,395.99.

331.    The Plaintiff does not dispute that his mortgage provides for the Statutory Power of Sale in the event of a default on the Note. However, upon information and belief, as the Note

is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

332.    Plaintiff Truong claims that said foreclosure action is illegal as no default exists to Holder of his Note, Banc of America Alternative Loan Trust 2005-2 Mortgage Pass-Through Certificates Series 2005-2, due to the third party servicer's payment of his mortgage to the Holder of his mortgage as required under the pooling and servicing agreement governing said mortgage and note.

333.     This type of action is representative of the Wells Fargo Trustee Defendant's behavior in all cases where foreclosure has be initiated and/or completed, on mortgage loans that were securitized and are governed by industry standard pooling and servicing agreements in the State of Massachusetts and nationwide.

**Song Kim Ros and Nhiep Hout Ros v  Bank of America, N.A., BAC Home Loan Servicing, LP, FNMA, and Harmon Law**

334.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

335.    Plaintiffs Song Kim Ros and Nhiep Hout Ros are citizens of the State of Massachusetts residing at 65 Parker Street, Brockton, MA 02302, which is one of the subject properties referred to herein.

336.    On or about January 11, 2007, Plaintiffs Ros gave a mortgage to Countrywide in the original principal amount of $220,000.00. Said mortgage was recorded in the Plymouth County Massachusetts Registry of Deeds in book 33973 at page 94.

337.    On or about March 2007, upon information and belief, said mortgage was pooled by Trustee Defendant FNMA, with a large number of other mortgages and sold to an as yet unknown and unidentified FNMA created Trust.

338.    On or about July 2008, the servicing rights regarding Plaintiffs Ros mortgage were transferred to BAC Home Loans Servicing, LP as part of Bank of America, N.A.'s purchase of Countrywide.

339.    Upon information and belief, the servicing of the Mortgage, and the Note given by Plaintiffs Ros was, from that point on, governed by a FNMA Master Trust Agreement and their mortgage payments were unconditionally guaranteed, by FNMA, to said Trust, as specified in said Trust Agreement.

340.    On or about July 2009, Plaintiffs Ros began to experience financial difficulty and was unable to make their mortgage payments.

341.    Upon information and belief, BAC Home Loans Servicing, LP, Bank of America, N.A. and/or FNMA forwarded payment, on behalf of Plaintiffs Ros, to the Holder of Plaintiff Ros' Note, as would be required under the FNMA Master Trust Agreement governing Plaintiffs Ros' mortgage.

342.    Upon information and belief, BAC Home Loans Servicing, LP, Bank of America, N.A. and/or FNMA has forwarded, on behalf of Plaintiffs Ros, all payments not made by Plaintiffs Ros to the Holder of Plaintiff Ros' Note, as would be required under the FNMA Master Trust Agreement governing Plaintiff s Ros' mortgage.

343.    On May 18, 2011, Harmon Law Offices, P.C. sent a notice to Plaintiffs Ros stating that it had been retained by BAC to foreclose on Plaintiff's mortgage.

344.    The Plaintiffs do not dispute that their mortgage provides for the Statutory Power of Sale in the event of a default of the Note. However, upon information and belief, as the Note is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

345.    Plaintiffs Ros claim that said foreclosure action is illegal as no default exists to Holder of their mortgage due to the third party servicer's (BAC) and/or Master Servicer FNMA's payment of their mortgage to the Holder of their mortgage as required under the FNMA Master Trust Agreement governing said mortgage.

346.    Plaintiffs Ros further claim that said foreclosure action is illegal as BAC Home Loan Servicing, LP is not the present Holder of either their Mortgage and/or Note as stated in said foreclosure notice, as those documents were transferred to a FNMA Trust on or about March

2007. Should BAC Home Lonas Servicing, LP have physical possession of either document, it is only as document custodian, not as Holder, as specified in said FNMA Master Trust Agreement (Exhibit 11 *Id. at pp. 31 sec 3.4(2) Custody of Mortgage Documents - Custodial Capacity*).

347.    As no default of the Note existed to said, as yet unidentified, Trust, which was the lawful owner of said Mortgage and Note, the foreclosure and foreclosure proceedings are/were invalid.

348.     This type of action is representative of the Bank of America Servicer Defendants, FNMA, and Trustee Defendant Harmon Law's behavior in all cases where foreclosure has been initiated and/or completed, on mortgage loans that were securitized and are governed by private label securitized mortgage backed Trusts and/or Single-Family Master Trust Agreements of FNMA sponsored Trusts in the State of Massachusetts and nationwide.

**Marlena Davis v Deutsche Bank National Trust Company and Harmon Law**

349.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

350.    Plaintiff, Marlena Davis, became the owner of the property located at 66 Osceola Street, Mattapan, MA 02126 on October 30, 2003.  The Deed granting Davis the property was recorded in the Suffolk County Registry of Deeds in Book 33153 Page 258 on October 31, 2003.

351.    On October 30, 2003, Davis executed a mortgage which she believed was to Direct Finance Corporation and which identified Direct Finance Corporation as the Lender (the "Mortgage"). The Mortgage to Davis secured a loan to Davis in the amount of $322,000.00. The Mortgage was recorded in the Suffolk County Registry of Deeds in Book 33153 Page 259 on October 31, 2003.

352.    On October 30, 2003, the Davis Mortgage was assigned from Direct Finance Corporation to RBMG, Inc. The Assignment was recorded in the Suffolk County Registry of Deeds in Book 38876 Page 10 on January 18, 2006.

353.    On or about March 30, 2006, the Davis Mortgage was again assigned, from RBMG, Inc (by its successor NetBank) to MERS, Inc. This second Assignment was recorded in the Suffolk County Registry of Deeds in Book 39339 Page 288 on April 4, 2006. In the upper right corner of said Assignment is a grouping of identification numbers which includes the "Pool Number" for said Mortgage as "MST090104". This number is a coded identification for the Trust that was then, and is now, the actual owner and holder of the Davis Mortgage and Note; i.e. Morgan Stanley Mortgage Loan Trust 2004-9. The "MST" of the "Pool Number" corresponds to Morgan Stanley Trust. The "09" corresponds to the -9 part of the Trusts identification as registered with the Securities and Exchange Commission and is an indicator of this being the ninth trust created in the calendar year indicated which in this case is 0104 which stands for the month and year the original Securities and Exchange Commission registered prospectus of said Trust was filed pursuant to rule 424 (b) (5) SEC which was January 28, 2004. The aforementioned fact is noted in the Prospectus Supplement (to the Original Prospectus dated January 28, 2004), SEC Registration File No.: 333-104283 dated October 27, 2004 (Exhibit 12 *Id. at pp. i – ii*).

354.    On January 15, 2010, the Davis Mortgage was assigned a third time from MERS, Inc. to Deutsche Bank National Trust Company, as Trustee under the Morgan Stanley Mortgage Loan Trust Agreement for 2004-9. In January of 2004 said Trust was created. Thus the Third Assignment failed to validly assign the mortgage and note into said Trust because the Second Assignment itself was void. The Third Assignment was recorded in the Suffolk County Registry of Deeds in Book 45995 Page 223 on January 25, 2010.

355.    Davis was never told by the Defendants who held the beneficial interest in the loan or the Promissory Note. Furthermore, it appears that the Defendant Deutsche Bank National Trust Company, as Trustee under the Morgan Stanley Mortgage Loan Trust Agreement for 2004-9 went to considerable lengths to conceal the fact that the Morgan Stanley Mortgage Loan Trust 2004-9 would claim to be the holder of the Davis Mortgage as evidenced by the