meaningless chain of assignments recorded in the Suffolk County Registry of Deeds over the past seven years.

356.    While RBMG and MERS declared itself the "holder of" of the Davis Mortgage in the Land Evidence Records Suffolk County Registry of Deeds, both entities were merely used to hide the transfer of the beneficial interest in the Davis loan to the Morgan Stanley Mortgage Loan Trust 2004-9 for an undisclosed amount of fees.

357.    Deutsche Bank as Trustee for said Trust, was the holder of the Davis Mortgage and Note since, on or about, the closing date of said Trust, October 29, 2004, as is required by the Assignment Agreement and Mortgage Loan Purchase Agreement regarding said Trust, as noted in the Prospectus Supplement (to the Original Prospectus dated January 28, 2004), SEC Registration File No.: 333-104283 dated October 27, 2004 as registered with the Securities and Exchange Commission (Exhibit 12 *id. at pp. S-37 & S-38"Assignment of Mortgage Loans"*).

358.    Moreover, as stipulated by the legally binding aforementioned Pooling and Servicing Agreement regarding the Morgan Stanley Mortgage Loan Trust 2004-9, (as noted in the Prospectus Supplement to the Original Prospectus dated January 28, 2004, SEC Registration File No.: 333-104283 dated October 27, 2004) the Master Servicer and Servicers of said Trust (Wells Fargo and/or its wholly owned subsidiary Americas Servicing Company a.k.a. ASC) is required to advance monthly, from its own funds, all payments of principal and interest due but not received by the 15th of each month. This is evidenced in the said Prospectus Supplement regarding the loans held in the Morgan Stanley Mortgage Loan Trust 2004-9 (Exhibit 12 *id. at pp. S-52, S-53*)  under the heading titled "*Advances*".

359.    Upon information and belief, the Master Servicer/Servicer of the Davis loan (Wells Fargo/ASC – Exhibit 12 *Id. at pp. I & S-1*) did in fact meet its contractual obligations under the Pooling and Servicing Agreement regarding the Morgan Stanley Mortgage Loan Trust 2004-9 and therefore has, to date, as a third party, paid on behalf of Davis all of the delinquent payments regarding her loan to the Trust claiming to be the holder of the Davis Mortgage and

Note (the Morgan Stanley Mortgage Loan Trust 2004-9) without Davis' knowledge or consent. As such, under Massachusetts Law Davis' Note is not in default to the holder of said instrument.

360.    The Plaintiff does not dispute that her mortgage provides for the Statutory Power of Sale in the event of a default of the Note. However, upon information and belief, as the Note is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

361.    On October 17, 2011, Deutsche Bank, as Trustee for the Morgan Stanley Mortgage Loan Trust 2004-9 sent Plaintiff a "Notice of Intention to Foreclose", stating its intention to foreclose on Davis' property on November 16, 2011.

362.    The Notice of Intent to Foreclose as well as all publications in which Deutsche Bank stated intent to foreclose on Davis' property on November 16, 2011 is void because the Note claimed to be held by Deutsche Bank, as Trustee for the Morgan Stanley Mortgage Loan Trust 2004-9 was not in default at the time of the publications and foreclosure sale.

363.    Plaintiff Davis claims that said foreclosure action is illegal as no default exists to Holder/Owner of her Note, the Morgan Stanley Mortgage Loan Trust 2004-9, due to the third party servicer's payment of her mortgage to the Holder of his Note, as required under the pooling and servicing agreement governing said mortgage and note.

364.     This type of action is representative of the Deutsche Bank Trustee Defendant's behavior in all cases where foreclosure has be initiated and/or completed, on mortgage loans that were securitized and are governed by industry standard pooling and servicing agreements in the State of Massachusetts and nationwide

**Kolap Im v U.S. Bank, N.A. and Doonan, Graves & Longoria**

365.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

366.    Plaintiff Kolap Im is a citizen of the State of Massachusetts residing at 21 Hillside Street, Lowell, MA 01851, which is the subject property referred to herein.

367.    On or about February 17, 2006, Plaintiff gave a mortgage to New Century Mortgage Corporation in the original principal amount of $323,000.00.

368.    On or about March 28, 2006, Plaintiff's mortgage was pooled and sold to a Trust named MASTR Asset Backed Securities Trust, 2006-NC3. U.S. Bank, N.A. was appointed as Trustee of said Trust.

369.    On or about April 2009, Plaintiff began to experience financial difficulty and was unable to make her mortgage payments.

370.    Upon information and belief, Servicer Defendant HomEq Servicing forwarded payment, on behalf of Plaintiff, to the Note-holder of Plaintiff's Note, MASTR Asset Backed Securities Trust, 2006-NC3, to its Trustee, U.S. Bank, N.A. as required under the pooling and servicing agreement, as referenced in the Prospectus Supplement of said Trust (Exhibit 13 *Id. at pp.14 "Advances"*) which owns Plaintiff's Mortgage and Note.

371.    Upon information and belief, Servicer Defendant HomEq Servicing, had forwarded, on behalf of Plaintiff, all payments not made by Plaintiff to the Holder of Plaintiff's Note, MASTR Asset Backed Securities Trust, 2006-NC3, to its Trustee, U.S. Bank, N.A. as required under the aforementioned Prospectus Supplement and pooling and servicing agreement governing Plaintiff's mortgage.

372.    On October 20, 2009, Defendant Doonan, Graves & Longoria, LLC sent a notice to Plaintiff stating that it had been retained by U.S. Bank, N.A., as Trustee for the MASTR Asset Backed Securities Trust, 2006-NC3, to foreclose on Plaintiff's Mortgage. Additional foreclosure auction dates were also set by said Defendants on or about March 25, 2010 and May 25, 2010.

373.    The Plaintiff does not dispute that her Mortgage provides for the Statutory Power of Sale in the event of a default on the Note. However, upon information and belief, as the Note was not, nor has it ever been, in default to its Holder, the Statutory Power of Sale could not legally be exercised.

374.    Plaintiff claims that said foreclosure action was illegal as no default existed to Holder of her Note, MASTR Asset Backed Securities Trust, 2006-NC3, due to the third party servicer's payment of her mortgage to the Holder of her mortgage as required under the pooling and servicing agreement governing said Mortgage and Note.

375.    This type of action is representative of the U.S. Bank, N.A. Trustee Defendant's behavior in all cases where foreclosure has be initiated and/or completed, on mortgage loans that were securitized and are governed by industry standard pooling and servicing agreements in the State of Massachusetts and nationwide.

**Vandy & Daovanney Duch v Ocwen Loan Servicing, LLC, an as yet identified Mortgage Backed Trust and said Trust's as yet identified Trustee**

376.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

377.    Plaintiffs, Vandy & Daovanney Duch are citizens of the State of Massachusetts residing at 335 Walker Street, Lowell, MA 01851, which is the one of the subject properties incorporated and referred to herein.

378.    On or about May 22, 2007, Plaintiffs gave a mortgage to First Call Mortgage Company, Inc. in the original principal amount of $305,600.00.

379.    On or about June – July 2007, Plaintiffs' Mortgage and Note were pooled and sold to an as yet identified Trust.

380.    On or about May 2009, Plaintiffs began to experience financial difficulty and were unable to make their mortgage payments.

381.    Plaintiffs made an application to the Taylor Bean & Whitaker Servicer Defendant for consideration for Plaintiffs' mortgage to be modified under the guidelines and supplemental directives of the U.S. Treasury Department's Making Home Affordable Home Affordable Modification Program that included personal financial information, tax information, and a statement attesting to Plaintiffs' hardship on or about August 2009.

382.     Plaintiffs made another application to the Ocwen Servicer Defendant for consideration for Plaintiffs' mortgage to be modified under the guidelines and supplemental directives of the U.S. Treasury Department's Making Home Affordable Home Affordable Modification Program that included personal financial information, tax information, and a statement attesting to Plaintiffs' hardship on or about March 2010, after the servicing rights to Plaintiffs' mortgage had been sold to the Ocwen Servicer Defendant.

383.     During the time period of Plaintiffs' request for HAMP consideration they suffered extreme emotional and mental distress as both Servicer Defendants referred them to foreclosure on or about October 2009, February 2010, April 2010, and May 2010.

384.     On or about September 1, 2009, Defendant Orlans Moran, PLLC. sent Plaintiffs a Notice of Intention to Foreclose on behalf of Taylor Bean & Whittaker stating a scheduled auction date of October 29, 2009. The aforementioned auction date was postponed numerous times to April 1, 2010, and again to May 1, 2010.

385.     Upon information and belief, Taylor Bean & Whitaker and Ocwen forwarded payment, on behalf of Plaintiff s, to the Note-holder of Plaintiffs' Note, an as yet identified Trust, to its as yet identified Trustee, as required under the pooling and servicing agreement governing Plaintiff s' mortgage.

386.     Upon information and belief, Taylor Bean & Whitaker and/or Ocwen had forwarded, on behalf of Plaintiffs, all payments not made by Plaintiff s to the Holder of Plaintiffs' Note, as would be required under the pooling and servicing agreement governing Plaintiffs' mortgage.

387.     The Plaintiffs do not dispute that their mortgage provides for the Statutory Power of Sale in the event of a default on the Note. However, upon information and belief, as the Note was not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

388.     Plaintiff s claim that said foreclosure actions were illegal as no default existed to Holder of their Note, , due to the third party servicer's payment of their mortgage to the

Holder of their Mortgage as required under the pooling and servicing agreement governing said Mortgage and Note.

**Moise Fils v U.S. Bank, N.A. and Harmon Law**

389.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

390.    Plaintiff Moise Fils is a citizen of the State of Georgia and owns property in the State of Massachusetts located at 18A Business Terrace, Unit 18A, Hyde Park, MA 02368, which is one of the subject properties referred to herein.

391.    On or about April 28, 2006, Plaintiff gave a mortgage to New Century Mortgage Corporation in the original principal amount of $294,405.00.

392.    On or about June 2006, but not later than August 26, 2006, Plaintiff's Mortgage was pooled and sold to a Trust named J.P. Morgan Mortgage Acquisition Trust 2006-NC2, Asset Backed Pass-Through Certificates Series 2006-NC2. U.S. Bank, N.A. was appointed as Trustee of said Trust, and JPMorgan Chase Bank, N.A. was appointed servicer of said Trust.

393.    On or about January 2010, Plaintiff began to experience financial difficulty and was unable to make his mortgage payments.

394.    On August 16, 2011, Harmon Law Offices, P.C. sent a notice to Plaintiff stating that it had been retained by JPMorgan Chase Bank, N.A. to foreclose on Plaintiff's mortgage. This notice further states that Harmon Law P.C. has been instructed to bring foreclosure in the name of U.S. Bank, N.A., as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-NC2, Asset Backed Pass-Through Certificates Series 2006-NC2, to its Trustee.

395.    The aforementioned notice states that under the terms of Plaintiff's Note and Mortgage, there is outstanding $283.263.71 in principal and $7,483.50 in interest and other charges for a total of $290,747.21.

396.    Upon information and belief, JPMorgan Chase Bank, N.A. forwarded payments, on behalf of Plaintiff, to the Note-holder of Plaintiff's Note, as required under the Prospectus

Supplement (Exhibit 14 *Id. at pp.120-121 "Advances"*) and pooling and servicing agreement governing the servicing of Plaintiff's mortgage.

397.    Upon information and belief, JPMorgan Chase Bank, N.A. has forwarded and continues to forward, on behalf of Plaintiff, all payments not made by Plaintiff to the Holder of Plaintiff's Note, J.P. Morgan Mortgage Acquisition Trust 2006-NC2, Asset Backed Pass-Through Certificates Series 2006-NC2, to its Trustee, U.S. Bank, N.A. as required under the Prospectus Supplement (Exhibit 14 *Id. at pp.120-121 "Advances"*) and pooling and servicing agreement governing the servicing of Plaintiff's mortgage.

398.    The Plaintiff does not dispute that his mortgage provides for the Statutory Power of Sale in the event of a default on the Note. However, upon information and belief, as the Note is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

399.    Plaintiff claims that said foreclosure action is illegal as no default exists to Holder of his Note, J.P. Morgan Mortgage Acquisition Trust 2006-NC2, Asset Backed Pass-Through Certificates Series 2006-NC2, due to the third party servicer's payment of his mortgage to the Holder of his mortgage as required under the pooling and servicing agreement governing said mortgage and note.

400.    This type of action is representative of the U.S. Bank and Harmon Law Trustee Defendants' behavior in all cases where foreclosure has be initiated and/or completed, on mortgage loans that were securitized and are governed by industry standard pooling and servicing agreements in the State of Massachusetts and nationwide.


**Chheang Thy and In Thy v FNMA and Harmon Law, PC.**

401.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

402.    On or about February 19, 1998, Plaintiffs, Chheang Thy and In Thy, purchased the Property located at 55 Geneva Street, Revere, MA 02151 in consideration of $149,000.00.

403.    On or about February 19, 1998 a Quitclaim Deed was recorded in the Suffolk County Registry of Deeds in Book 22167 Page 312 granting the Property to Plaintiff.

404.    On February 13, 2008, a Mortgage in the amount of $386,500.00 was recorded in the Suffolk County Registry of Deeds on Book 43097 Page 253.  The Mortgage identified Plaintiffs Chheang Thy and In Thy as the "borrowers" and Chevy Chase Bank FSB as "Lender".

405.    On or about March 2008, upon information and belief, said mortgage was pooled by Trustee Defendant FNMA, with a large number of other mortgages and sold to an as yet unknown and unidentified FNMA created Trust.

406.    On or about July 2010, the servicing rights regarding Plaintiffs Mortgage were transferred to Capital One via an "Assignment of Mortgage" which was recorded in the Suffolk County Registry of Deeds Book 46647 Page 84, on July 14, 2010, purporting to assign the Mortgage and Note to Capital One

407.    Upon information and belief, the servicing of the Mortgage, and the Note given by Plaintiffs was, from on or about March 2008, governed by a FNMA Master Trust Agreement and their mortgage payments were unconditionally guaranteed, by FNMA, to said Trust, as specified in said Trust Agreement.

408.    On or about January 2010, Plaintiffs began to experience financial difficulty and were unable to make their mortgage payments.

409.    On July 26, 2010, Harmon Law filed a Servicemembers' Relief Act Complaint and Order of notice with the Suffolk County Land Court to foreclose on the Property on behalf of Capital One.

410.    On October 5, 2010, Harmon Law sent Plaintiff a Notice of Notice of Mortgage Foreclosure Sale on behalf of Capital One which stated that the foreclosure sale would be held on November 10, 2010.

411.    Upon information and belief, Capital One and/or FNMA forwarded payment, on behalf of Plaintiffs, to the Holder of Plaintiff s' Note, as would be required under the FNMA Master Trust Agreement governing Plaintiffs'  mortgage.

412.    Upon information and belief, Capital One and/or FNMA had forwarded, on behalf of Plaintiffs, all payments not made by Plaintiffs to the Holder of Plaintiff s' Note, as would be required under the FNMA Master Trust Agreement governing Plaintiff s' mortgage.

413.    On February 8, 2011, a Foreclosure Deed dated January 10, 2011, was recorded in the Suffolk County Registry of Deeds in Book 47577 Page 18 purporting to grant ownership and title to the property to FNMA.

414.    On March 7, 2011, Harmon Law filed a Summary Process proceeding to evict the Plaintiff from the Property on behalf of FNMA.

415.    The Plaintiffs do not dispute that their mortgage provides for the Statutory Power of Sale in the event of a default of the Note. However, upon information and belief, as the Note is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

416.    Plaintiffs claim that said foreclosure action is illegal as no default exists to Holder of their mortgage due to the third party servicer's (Capital One) and/or Master Servicer FNMA's payment of their mortgage to the Holder of their mortgage as required under the FNMA Master Trust Agreement governing said mortgage.

417.    Plaintiffs further claim that said foreclosure action is illegal as Capital One was not the present Holder of either their Mortgage and/or Note as stated in said foreclosure notice, as those documents were transferred to a FNMA Trust on or about March 2008. Should Capital One have physical possession of either document, it is only as document custodian, not as Holder, as specified in said FNMA Master Trust Agreement (Exhibit 11 *Id. at pp. 31 sec 3.4(2) Custody of Mortgage Documents - Custodial Capacity*).

418.     As no default of the Note existed to said, as yet unidentified, Trust, which was the lawful owner of said Mortgage and Note, the foreclosure and foreclosure proceedings are/were invalid.

419.      This type of action is representative of the Capital One Servicer Defendant, FNMA, and Trustee Defendant Harmon Law's behavior in all cases where foreclosure has been initiated and/or completed, on mortgage loans that were securitized and are governed by private label securitized mortgage backed Trusts and/or Single-Family Master Trust Agreements of FNMA sponsored Trusts in the State of Massachusetts and nationwide.

**Randy and Suzanne Follett v Wells Fargo Bank, National Association,**

420.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

421.     On or about October 25, 2004, Plaintiffs, Randy and Suzanne Follett, were granted the Property located at 57 Mayflower Lane, Wareham, MA.

422.     The Plaintiffs purchased the Property via financing in the amount of $317,000.00 arranged by former mortgage broker, Mulberry Mortgage located at 350 Woodland St, Holliston, MA.  Mulberry Mortgage arranged for the Plaintiff's to receive 2 loans from Fremont Mortgage in the amount of $254,000.00 and $63,500.00 for the purchase of the property.

423.     On June 9, 2005, Follett executed a mortgage which identified Fremont as Lender on Page 1 Paragraph D ("Mortgage"). The mortgage to Follett allegedly secured a loan to Follett in the amount of $360,000.00.  The Mortgage Deed was recorded in the Plymouth County Registry of Deeds in Book 30709 Page 320.

424.     On or about November 3, 2005, Plaintiff s' Mortgage was pooled and sold to a Trust named**,** Securitized Asset-Backed Receivables LLC 2005-Fr5 Mortgage Pass- Through Certificates, Series 2005-FR5. Wells Fargo Bank, N.A. was appointed as Trustee of said Trust.  On or about August 2007 the servicing of Plaintiffs' Mortgage was transferred to Countrywide Home Mortgage.

425.    On or about September 2009, Plaintiff s began to experience financial difficulty and was unable to make their mortgage payments.

426.    On December 14, 2009, Wells Fargo filed a Service members' Relief Act Complaint and Order of Notice with the Plymouth County Land Court asking for "authority to foreclose" on the Property on behalf of Wells Fargo as Trustee for Securitized Asset-Backed Receivables LLC 2005-FR5 Mortgage Pass- Through Certificates, Series 2005-FR5.

427.    The aforementioned notice states that under the terms of Plaintiff Truong's Note and Mortgage, there is outstanding $324,851.19 in principal and $21, 544.80 in interest and other charges for a total of $346,395.99.

428.    On or about August 9, 2010 Plaintiffs' aforementioned property was auctioned at foreclosure sale and purchased by Wells Fargo Bank, N.A., as Trustee for, Securitized Asset-Backed Receivables LLC 2005-FR5 Mortgage Pass- Through Certificates, Series 2005-FR5.

429.    Upon information and belief, BAC Home Loans Servicing, LP and/or Bank of America, N.A. forwarded payment, on behalf of Plaintiff s, to the Note-holder of Plaintiff Truong's Note, Securitized Asset-Backed Receivables LLC 2005-FR5 Mortgage Pass-Through Certificates, Series 2005-FR5, to its Trustee, Wells Fargo Bank, N.A. as required under the Prospectus (Exhibit 15 *Id. at pp. 151 {s-107}, 184-186 {s-124-125} "P&I Advances and Servicing Advances"*) and pooling and servicing agreement governing the servicing of Plaintiff s' mortgage.

430.    Upon information and belief, BAC Home Loans Servicing, LP has forwarded, on behalf of Plaintiff s, all payments not made by Plaintiff s to the Holder of Plaintiffs' Note, Securitized Asset-Backed Receivables LLC 2005-FR5 Mortgage Pass- Through Certificates, Series 2005-FR5, to its Trustee, Wells Fargo Bank, N.A. as required under the Prospectus (Exhibit 15 *Id. at pp. 151 {s-107}, 184-186 {s-124-125} "P&I Advances and Servicing Advances"*) and pooling and servicing agreement governing the servicing of Plaintiffs' mortgage.

431.    The Plaintiffs do not dispute that their mortgage provides for the Statutory Power of Sale in the event of a default on the Note. However, upon information and belief, as the Note is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

432.    Plaintiffs claim that said foreclosure action is illegal as no default exists to Holder of his Note, Securitized Asset-Backed Receivables LLC 2005-FR5 Mortgage Pass- Through Certificates, Series 2005-FR5, due to the third party servicer's payment of their mortgage to the Holder of their mortgage as required under the pooling and servicing agreement governing the servicing of said Mortgage and Note.

433.     This type of action is representative of the Bank of America Servicing Defendants', and the Harmon Law, PC. And Wells Fargo Trustee Defendants' behavior in all cases where foreclosure has be initiated and/or completed, on mortgage loans that were securitized and are governed by industry standard pooling and servicing agreements in the State of Massachusetts and nationwide.

**Chantha Oum v AHMSI, Wells Fargo Bank, N.A., and Ablitt Scofield**

434.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

435.    Plaintiff Chantha Oum is a citizen of, and owns property in the State of Massachusetts located at 18 Bourne Street, Lowell, MA 01852, which is one of the subject properties referred to herein.

436.    On or about April 28, 2006, Plaintiff gave a mortgage to Option One Mortgage Corporation in the original principal amount of $168,300.00.

437.    On or about June 2006, but not later than March 12, 2007, Plaintiff's Mortgage was pooled and sold to a Trust named Option One Mortgage Loan Trust 2007-2. Wells Fargo Bank, N.A. was appointed as Trustee of said Trust, and Option One was appointed servicer of said Trust.

438.    At some unknown point in time after March 12, 2007, American Home Mortgage Servicing, Inc. (hereinafter referred to as "AHMSI") became the servicer of mortgages owned by the Option One Mortgage Loan Trust 2007-2.

439.    On or about April 2009, Plaintiff began to experience financial difficulty and was unable to make her mortgage payments.

440.    On September 1, 2010, Wells Fargo filed a Service members' Relief Act Complaint and Order of Notice with the Middlesex County Land Court asking for "authority to foreclose" on the Property on behalf of Wells Fargo as Trustee for Option One Mortgage Loan Trust 2007-2, through its attorney Ablitt Scofiled.

441.    On or about September 22, 2010, Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-2 was granted a Judgment Authorizing Foreclosure action against Plaintiffs aforementioned property, by the Middlesex Superior Court, in civil action # MLCV2010-02771-G.

442.    On or about January 4, 2011 Plaintiffs' aforementioned property was auctioned at foreclosure sale and purchased by Wells Fargo Bank, N.A., as Trustee for, Option One Mortgage Loan Trust 2007-2.

443.    On or about June 24, 2011 a Foreclosure Deed was recorded in the Middlesex North Registry of Deeds purporting to grant the property to Wells Fargo Bank, N.A., as Trustee for the Option One Mortgage Loan Trust 2007-2.

444.    Upon information and belief, AHMSI forwarded payment, on behalf of Plaintiff, to the Note-holder of Plaintiff's Note, Option One Mortgage Loan Trust 2007-2, to its Trustee, Wells Fargo Bank, N.A. as required under the Prospectus (Exhibit 16 *Id. at pp. 86-87 "Advances"*) and pooling and servicing agreement governing the servicing of Plaintiff s' mortgage.

445.    Upon information and belief, AHMSI has forwarded, on behalf of Plaintiff, all payments not made by Plaintiff to the Holder of Plaintiff's Note, Option One Mortgage Loan Trust 2007-2, to its Trustee, Wells Fargo Bank, N.A. as required under the Prospectus

(Exhibit 16 *Id. at pp. 86-87 "Advances"*) and pooling and servicing agreement governing the servicing of Plaintiff's mortgage.

446.     The Plaintiff does not dispute that her mortgage provides for the Statutory Power of Sale in the event of a default on the Note. However, upon information and belief, as the Note is not, nor has it ever been, in default to its Holder, the Statutory Power of Sale cannot legally be exercised.

447.     Plaintiff claims that said foreclosure action is illegal as no default exists to Holder of her Note, Option One Mortgage Loan Trust 2007-2, due to the third party servicer's payment of her mortgage to the Holder of her mortgage as required under the pooling and servicing agreement governing the servicing of said Mortgage and Note.

448.      This type of action is representative of the AHMSI Servicing Defendant, and the Ablitt Scofield, and Wells Fargo Trustee Defendants' behavior in all cases where foreclosure has been initiated and/or completed, on mortgage loans that were securitized and are governed by industry standard pooling and servicing agreements in the State of Massachusetts and nationwide.


**Defendant's Actions Caused Injury to Plaintiff**

449.     Plaintiffs have suffered injury caused by Defendant's actions, including but not limited to, the loss of property through foreclosure, legal costs incurred to stay eviction and contest foreclosure, severe mental and emotional distress intentionally inflicted by Defendants.

## CLASS ACTION ALLEGATIONS

450.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

451.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

452.     So as to the Originator Defendants, the named Plaintiffs sue on behalf of themselves and all Massachusetts homeowners whose loans have been originated by the Originator

Defendants using significantly reduced underwriting standards designed to allow borrowers to obtain mortgages without proper verification of income, no-doc and no money down programs, offering extremely risky credit terms to unsophisticated borrowers such as negative amortization, interest only payment options and, adjustable rate mortgage terms that the Originator Defendants knew would be unsustainable for borrowers.

453.     So as to the Servicer Defendants, the named Plaintiffs sue on behalf of themselves and all Massachusetts homeowners whose loans were originated, since January 2000, but not after December 31, 2008, and/or have been serviced by the Servicer Defendants, and who, since August 28, 2009, have requested consideration and/or applied with the Servicer Defendants for a HAMP modification and whereby the Servicer Defendants fraudulently represented it was a participating servicer in the HAMP Program, bound to abide by its rules, guidelines and supplemental directives all while knowing they could not modify Plaintiffs' and others mortgages due to contractual limitations contained in the Pooling and Servicing Agreements they had previously entered into governing the servicing of Plaintiffs' and others mortgages but still represented to those borrowers that their mortgages could in fact be modified and purposefully hindered the modification process in an effort to enrich themselves who were either;

       a.     Referred to foreclosure while being considered for a HAMP modification and/or while under a HAMP Trial Period Plan agreement and/or having been granted a HAMP permanent modification;

    or

       b.     Foreclosed upon while being considered for a HAMP modification and/or while under a HAMP Trial Period Plan

agreement and/or having been granted a HAMP permanent modification;

or

c.    Suffered systematic, redundant and repetitive documentation requests, deceptive claims that documents were lost or never received,  deceptive and misleading claims that request were stalled in underwriting, negotiation and/or quality control, in violation of HAMP Guidelines and Supplemental Directives regarding the timely review of requests, in an effort to keep those mortgage loans in a near perpetual state of default as part of a scheme to increase servicing fees through artificial inflation of principal balance totals, the billing of servicing advances and other illicit mortgage servicing activities as described herein of the pools of mortgages they serviced;

or

d.    Denied a HAMP Modification without due cause;

454.    So as to the Trustee Defendants, the named Plaintiffs sue on behalf of themselves and all Massachusetts homeowners whose loans have been serviced by the Servicer Defendants, that are/were held in Trusts governed by standard private label pooling and servicing agreements and/or FNMA Master Trust Agreements, with respect to periodic/delinquent advances required to be made by the Servicer Defendants and or FNMA, as servicer and/or Master Servicer, regarding all payments not received by the Servicer Defendants and/or FNMA, to the Trusts which owned the mortgages serviced by the Servicer Defendants and/or FNMA acting In its capacity as Master Servicer and/or Trustee, and had foreclosure proceedings initiated against and/or completed against them by the Trustee Defendants and or

the Servicer Defendants acting on behalf of, or at the instruction of, the Trustee Defendants or

FNMA who were either;

a.    Referred to foreclosure whereby fraudulent and false

representations were made to establish a default of Note to true

owner of said Note;

or

b.    Foreclosed upon whereby fraudulent and false representations

were made to establish a right to chain of title of said

Mortgage/Note (i.e. "robo-signing", wrongful and invalid

assignments, etc.);

455.    Excluded from the Class are governmental entities, Defendants, their affiliates and

subsidiaries, the Defendants' current employees and current or former officers, directors,

agents, representatives, their family members, the members of this Court and its staff.

456.    Plaintiffs do not know the exact size or identities of members of the Class, since such

information is in the exclusive control of Defendants.  Plaintiffs believe that the Class

encompasses tens or hundreds of thousands of individuals whose identities can be readily

ascertained from Defendants' books and records.  Therefore, the Class is so numerous that

joinder of all members is impracticable.

457.    All members of the Class have been subject to and affected by the same conduct.  The

claims are based on standard form contracts and uniform loan modification processing

requirements.  There are questions of law and fact that are common to the Class, and

predominate over any questions affecting only individual members of the class.  These

questions include, but are not limited to the following:

a.    the nature and scope of the Servicer Defendants' misrepresentations regarding its intentions to properly administer and adhere to the guidelines and supplemental directives of the HAMP program and its misrepresentations to homeowners regarding HAMP and their ability to obtain a HAMP modification;

b.    whether all Defendants' conduct in the circumstances described herein and in the underlying complaints amounts to fraud;

c.    whether all Defendants' conduct in the circumstances described herein and in the underlying complaints amounts to deceptive and misleading business practices;

d.    whether all Defendants' conduct in the circumstances described herein and in the underlying complaints violates state consumer protection laws;

e.    whether the Originator Defendants' conduct violates applicable predatory lending laws;

f.    whether the Servicer and Trustee Defendants' conduct violates state foreclosure law;

g.    whether Servicer and Trustee Defendants' conduct violates applicable state Commercial Code and corresponding regulations; and

h.    whether the Court can order damages and enter injunctive relief.

458.    The claims of the Named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the class in that the Named Plaintiffs and the other members of the class were subject to the same conduct.

459.    The named Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

460.    A class action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

461.    This putative class action meets both the requirements of Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

462.    The Defendants acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## COUNT I

### *Fraud, Violations of Predatory Lending Law*

### *Re: Originator Defendant's Representations Regarding Soundness of its Mortgage Products*

463.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

464.    Plaintiffs brings this claim on their own behalf and on behalf of each member of the Class described above.

465.    Plaintiffs suffered damages as a result of Defendants originating residential mortgage loans using significantly reduced underwriting standards designed to allow borrowers to obtain mortgages without proper verification of income, using inflated appraisals and no money down programs, offering extremely risky credit terms to borrowers such as negative amortization, interest only payment options and, adjustable rate mortgage terms that Defendants knew would be unsustainable for borrowers.

466.    Plaintiffs suffered damages as a result of Defendants' fraudulent misrepresentations regarding financial soundness of its mortgage loan products. Defendants knew Plaintiffs borrower had paid no down payment in his property's purchase transaction, yet had developed a high risk lending instrument specifically tailored to the Plaintiffs' situation (and for others so similarly situated) so as to make said loan(s) to enrich themselves by fraudulently

misrepresenting the financial soundness of this lending instrument to Plaintiffs (and to others so similarly situated), knowing said loan would cause injury to the Plaintiff.

467.    Plaintiffs have suffered harm and are threatened with additional harm from Defendants' fraudulent, deceptive and misleading statements, including but not limited to longer loan payoff times, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, increased accrued interest, the wrongful loss of a property interest for those who have suffered foreclosure, and legal fees for defense of eviction

468.    As a result of these fraudulent misrepresentations, Defendants caused Plaintiffs harm, as alleged above.  Defendants' bad faith was thus to Plaintiffs' detriment.


## COUNT II

### *Violations of Massachusetts Consumer Protection Act and Applicable Regulations*
### *By the Servicer Defendants*

469.    Plaintiffs  repeat and re-allege every allegation above as if set forth herein in full.

470.    Plaintiffs brings this claim on their own behalf and on behalf of each member of the Class described above.

471.    Defendants have violated and continue to violate the Massachusetts Consumer Protection Act, G.L. c. 93A, §2(c) including, without limitation;

      a.    940 C.M.R. § 3.16, in that its conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business;

b.    940 C.M.R. § 3.16, in that its conduct violated existing statutes, rules, regulations or laws meant for the protection of the public's health, safety or welfare, as detailed below;

c.    940 C.M.R. § 3.05, in that it made deceptive representations or failed to disclose relevant information as to its intentions regarding its administration of the HAMP program, its contractual obligations under pre-existing Pooling and Servicing Agreements with the Trusts it serviced mortgages for and the misuse of its Loss Sharing Agreement with the FDIC;

d.    940 C.M.R. § 8.06, in that it is a Mortgage Lender and made false or misleading representations to borrowers; and

e.    940 C.M.R. § 25.03, because it offers foreclosure related services within the meaning of 940 C.M.R. § 25.01 without adequately describing the services offered.

472.    Plaintiffs have been injured suffering damages as a result of Defendants' fraudulent misrepresentations regarding the defaulted status of their Notes

473.    Plaintiffs have suffered harm and are threatened with additional harm from Defendants' fraudulent, deceptive and misleading statements, including the wrongful loss of a property interest for those who have suffered foreclosure.

474.    Defendants conduct as described in this complaint was and is willful or knowing within the meaning of the Massachusetts Consumer Protection Act, G.L. c. 93A, §9.

475.    As a result of these violations of Massachusetts Consumer Protection Act, G.L. c. 93A, §9, Defendants caused Plaintiff harm, as alleged above.  Defendants' bad faith was thus to Plaintiff's detriment.

476.    Defendants conduct as set forth herein violates established public policy, and the harms caused to consumers greatly outweighs any benefits associated with that conduct.

477.    As a result of Defendants conduct, Plaintiffs and others suffered ascertainable damages and ascertainable losses including:

96

a.      wrongful foreclosures;

b.      otherwise avoidable losses of homes to foreclosure;

c.      increased fees and other costs to avoid or attempt to avoid foreclosure;

d.      loss of savings in pointless attempts at modification;

e.      loss of opportunities to pursue other loss mitigation strategies;

f.      significant stress and emotional distress, and;

478.    Plaintiffs are entitled to actual, statutory and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

479.    On August 16, 2011, Plaintiff, Heang Ouch and others, sent all Defendants in this case a demand for relief pursuant to G.L. c. 93A. Copies of these letters will be attached as further Exhibits in an planned amended complaint

## COUNT III

### Violation of Massachusetts – Uniform Commercial Code
### By FNMA and the Trustee Defendants

480.    Plaintiffs  repeat and re-allege every allegation above as if set forth herein in full.

481.    Plaintiffs brings this claim on their own behalf and on behalf of each member of the Class described above.

482.    As the entity responsible for exercising the statutory power of sale, Defendants owed Plaintiff a duty of good faith and fair dealing in their conduct leading up to the foreclosure proceedings and sale.

483.    Defendants knew that Plaintiffs' mortgage payments had been made to the true holder in due course of the instrument (Note) on behalf of Plaintiffs by third parties (Servicer Defendants and/or FNMA) and as such Plaintiffs' monthly obligations were discharged.

484.    Defendants conduct as set forth herein affects the public interest and is part of a generalized course of conduct affecting numerous consumers.

485.    Defendants have violated and continue to violate the Massachusetts Uniform Commercial Code, G.L. c. 15, Chap. 106, Art. 3, §3-602  and §3-603 including, without limitation;

> a.      §3-603 that tender of payment of the obligation to pay the instrument was made to the entity entitled to enforce the instrument yet the default provisions of the instrument were enforced;
>
> b.      §3-602 the instrument was paid on behalf of the party obligated to pay the instrument, and to an entity entitled to enforce the instrument, and as such to the extent of the payment the obligation of the party obliged to pay the instrument should have been discharged, instead Defendants claimed instrument was in default and proceeded to foreclose.

486.    Plaintiffs and others have been injured suffered damages as a result of Defendants' fraudulent misrepresentations regarding the defaulted status of their Mortgage and/or Note

487.    Plaintiffs and others have suffered harm and are threatened with additional harm from Defendants fraudulent, deceptive and unlawful practices, including the wrongful loss of a property interest for those who have suffered foreclosure.

488.    As a result of these violations of Massachusetts Uniform Commercial Code, G.L. c. 15, Chap. 106, Art. 3, §3-602 and §3-603, Defendants caused Plaintiff and others harm, as alleged above.  Defendants' bad faith was thus to Plaintiffs' detriment.

489.    Defendants conduct was likely to induce reliance and to create confusion and misunderstanding.

490.    Defendants conduct as set forth herein is not required, permitted or authorized by any state or federal law.

491.    Defendants conduct as set forth herein violates established public policy, and the harms caused to consumers greatly outweighs any benefits associated with that conduct.

492.    As a result of Defendants conduct, Plaintiff and others suffered ascertainable damages and ascertainable losses including:

        a.    wrongful foreclosures;

        b.    otherwise avoidable losses of homes to foreclosure;

        c.    significant stress and emotional distress, and;

493.    Plaintiffs and others are entitled to actual, statutory and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

494.    Plaintiffs and others were damaged by this violation of law including without limitation, loss of equity, lost opportunity to work out modification of their mortgages, by imposition of inappropriate foreclosure fees, mental and emotional distress, and costs of defending themselves from foreclosure and/or eviction.

495.    The Plaintiffs and others are entitled to a declaratory judgment determining that the foreclosure proceedings and/or sales of their property are void.

496.    Plaintiffs and others are entitled to an injunction requiring that Defendants' take all necessary steps to restore legal title to their property as if no foreclosure sale had ever occurred.

497.    Plaintiffs and others are entitled to an injunction requiring that the Defendants be prevented from foreclosure action against Plaintiff and others so similarly situated, or any eviction action until such time as proper notice is made pursuant to statute.

498.    The Plaintiffs and others so similarly situated are entitled to cancellation of costs and fees assessed to their accounts for wrongful foreclosure, together with additional damages.

499.    Plaintiffs and others have suffered harm and are threatened with additional harm from Defendants fraudulent, deceptive and unlawful practices, including the wrongful loss of a property interest for those who have suffered foreclosure.

500.    Plaintiffs and others are entitled to actual, statutory and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request the following relief:

a.      Certify this case as a class action and appoint the named Plaintiffs to be class representatives and their counsel to be class counsel;

b.      Enter a judgment declaring the acts and practices of Defendants complained of herein do constitute a fraud, unfair and deceptive acts and practices, breach of duty of good faith and reasonable diligence, violations of state uniform commercial code, violations of state foreclosure law, and violation of state predatory lending laws together with an award of monetary damages and other available relief on those claims;

c.      Grant a permanent or final injunction enjoining Defendants agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiffs and the members of the Class;

d.      Order Defendants to adopt and enforce a policy that requires appropriate training of their employees and agents regarding their duties under HAMP;

e.      Order specific performance of Defendants obligations together with other relief required by law;

f.      Award actual, exemplary and/or statutory minimum damages;

g.      Award restitution and prejudgment interest;

h.      Award punitive damages;

i.       Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees;

j.       Award actual and/or statutory minimum damages pursuant to M.G.L. c. 93A, § 9(3);

k.       Award multiple damages pursuant to M.G.L. c. 93A, § 9(3), and;

j.       Grant Plaintiff and the Class such other and further relief as this Court finds necessary and proper.

Dated:  November 22, 2011

Respectfully Submitted,

_____/s/ Todd S. Dion_____
Todd S. Dion, Esq. (BBO #659109)
1319 Cranston Street
Cranston, RI 02920
Telephone: 401-663-0699
Facsimile:  401-270-2202
toddsdion@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2011, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to be registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

_____/s/ Todd S. Dion___ _____
Todd S. Dion, Esq.