UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-12090-RWZ

HEANG OUCH, *et al.*,
*on behalf of themselves and all others similarly situated*

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*

MEMORANDUM OF DECISION

January 10, 2013

ZOBEL, D.J.

      This putative class action raises a range of claims against a variety of mortgage originators, loan servicers, trustees of mortgage-backed securitization trusts, and law firms. Plaintiffs have conceded that their second amended complaint is facially deficient and should be dismissed. They now seek leave to file a third amended complaint, along with a later supplement. Defendants oppose plaintiffs' motions as futile, and three law firms named as defendants move for sanctions.

**I.    Motion for Leave to Amend**

      The court "should freely grant leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the court need not grant leave to amend if amendment would be futile—that is, if the complaint as amended would still fail to state a viable claim. Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009).

To state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs have apparently ignored the word "short"; their second amended complaint reached 170 pages, and the proposed third amended complaint adds 24 pages more. And despite its bulk, the proposed complaint still fails to state any plausible claim against any defendant. The motion for leave to amend is therefore denied.

A.   Count 1

The proposed complaint seeks damages in Count 1 from a number of financial institutions referred to collectively as the "originator defendants."[1] The complaint alleges that these defendants "fraudulently lower[ed] mortgage underwriting standards and the financial soundness of their mortgages [sic] products," and "were negligent in their marketing of their mortgage products and ignored their duty of care to Plaintiff borrowers and others." Docket # 126, Ex. A ("Proposed Compl.") ¶ 2; see id. at ¶¶ 884-89.

Count 1 fails to state a claim for several reasons. First, plaintiffs' fraud claims fail to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "In such cases, the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." Alt. Sys. Concepts, Inc. v. Synopsis, Inc., 374 F.3d 23, 29 (1st Cir. 2004); see McKenna v. Wells Fargo Bank, 693 F.3d 207,

---

[1] These defendants are identified in the proposed complaint as "Independent National Mortgage Corporation also known as IndyMac Bank, Countrywide, Bank of America, N.A., EMC Mortgage Corporation, Washington Mutual, Inc., Bear Sterns Residential Mortgage Corporation, VirtualBank a Division of Lidia Private Bank." Docket # 126, Ex. A ("Proposed Compl.") ¶ 2.

218 (1st Cir. 2012). Here, as in McKenna, the proposed complaint "fails to specify the time or place of these misrepresentations or their real content." 693 F.3d at 218. Instead, plaintiffs allege a grand "fraudulent scheme" by the originator defendants, "based on the systematic fraudulent business practice of originating mortgage loans using significantly reduced underwriting standards." Proposed Compl. ¶¶ 84, 86; see id. ¶¶ 83-96. The proposed complaint fails to state who made what alleged misrepresentations when and where to each named plaintiff. See, e.g., Proposed Compl. ¶¶ 234-35.[2] As such, plaintiffs' fraud claims fail to meet the heightened pleading standard of Rule 9(b).

Second, to the extent that plaintiffs raise separate negligence claims against the originator defendants, the proposed complaint does not plausibly allege any facts showing a duty of care by these defendants to plaintiffs. See Frappier v. Countrywide Home Loans, 645 F.3d 51, 58-59 (1st Cir. 2011) (no common law negligence claim available against a bank that carelessly overextends credit).

Third, plaintiffs' claims are barred by Massachusetts' three-year statute of limitations on tort claims (including fraud claims). See Mass. Gen. Laws ch. 260, § 2A. All of the allegedly fraudulent mortgages pleaded in the proposed complaint were originated by March 30, 2007 at the latest, well more than three years before plaintiffs' complaint was filed. Although plaintiffs allege they were not aware of the fraud until July

---

[2]Plaintiffs have added to their proposed complaint the name of each originator defendant's CEO, apparently to satisfy the "who" element of their fraud claims. But the "who" required by Rule 9(b) is the person who actually made the fraudulent misrepresentation. Plaintiffs do not claim that any CEO actually made any fraudulent misrepresentation directly to them. As such, the CEO names are irrelevant.

2011, see, e.g., Proposed Compl. ¶ 236, a reasonable person could have discovered the alleged fraud as soon as each mortgage closed based on the mortgage terms. See Salois v. Dime Sav. Bank of N.Y., 128 F.3d 20, 26 (1st Cir. 1997); Mantz v. Wells Fargo Bank, Civil Action No. 09-12010-JLT, 2011 WL 196915, at *6 (D. Mass. Jan. 19, 2011) ("In the context of mortgage loan transactions, the statute of limitations on fraud claims begins to run on the date of closing, as potential plaintiffs are on notice for fraud when they sign loan documents.").

**B.     Count 2**

Count 2 seeks damages against the "servicer defendants," a number of mortgage servicing entities.[3] Plaintiffs claim that these defendants violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, by "fraudulently, deceptively misleading Plaintiffs and others by exploiting homeowners [sic] attempts to modify their mortgages as part of an overall fraudulent scheme to maximize mortgage servicing profitability." Proposed Compl. ¶ 2.

The complaint alleges a vast fraudulent scheme by the servicer defendants to maladminister the government's Home Affordable Mortgage Program (HAMP). Plaintiffs

---

[3] The servicer defendants are identified in the proposed complaint as "OneWest Bank and its consortium of Investors; IMB HoldCo, LLC, IMB Management Holdings, LP, Dune Capital, LLC, J.C. Flowers & Co., MSD Capital, L.P., Stone Point Capital, Soros Fund Management, LLC, SSP Offshore, LLC, Paulson & Co. Silar Advisors, LP, SILAR MCF-1, LLC . . . Bank of America, N.A. & BAC Home Loans Servicing, LP . . . JPMorgan Chase Bank, Chase Home Finance, LLC & EMC Mortgage Corporation . . . Wells Fargo Bank, Wachovia & Americas Servicing Company . . . Ocwen Loan Servicing, LLC, American Home Loan Servicing, Inc., Barclays Capital Real Estate, Inc., d.b.a., HomEq Servicing, Taylor Bean & Whitaker, MidFirst Bank, Sovereign Bank, and Capital One." Proposed Compl. ¶ 2. Plaintiffs subsequently dismissed several of these defendants voluntarily. See Docket # 176.

concede that they have no private right of action under HAMP, but argue that the servicer defendants "fraudulently misrepresented their intentions . . . to properly administer and adhere to the guidelines and supplemental directives of the HAMP program, and made fraudulent misrepresentations to homeowners regarding HAMP." Proposed Compl. ¶ 170. This claim fails for at least two reasons. First, plaintiffs have again failed to plead the alleged fraudulent misrepresentations with the particularity required by Rule 9(b). In most cases, they have entirely failed to plead the required "who, what, where, and when," see Alt. Sys. Concepts, 374 F.3d at 29, and have only alleged a general policy of fraud and deception. See, e.g., Proposed Compl. ¶ 304. Even when the proposed complaint provides more details as to what was said and by whom, see, e.g., id. ¶ 309-17, the allegations do not raise a plausible inference of fraud as opposed to mere incompetence. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007) (plaintiff must plead facts suggesting liability, not merely consistent with liability).  Second, the complaint fails to allege that the plaintiffs sent each defendant a demand letter at least thirty days before filing suit, as required for claims under Mass. Gen. Laws ch. 93A. See Rodi v. S. New England Sch. of Law, 389 F.3d 5, 19 (2004). Plaintiffs' general allegation that "various Plaintiffs have sent many of the Defendants in this case demands for relief pursuant to G.L. c. 93A," Proposed Compl. ¶ 901, is not sufficient to show that this requirement has been fulfilled as to each 93A claim alleged against each defendant.

    **C.**    **Count 3**

Count 3 is brought against the servicer defendants named in Count 2, and also

against a group identified as the "trustee defendants": the Federal National Mortgage Association ("Fannie Mae"), certain financial institutions that organized mortgage-backed securitization trusts, and law firms that represented those financial institutions in foreclosure proceedings.[4] Plaintiffs allege in Count 3 that although they admittedly stopped making loan payments, their loans were never in default, and so the subsequent foreclosures were wrongful. Understanding plaintiffs' theory—and its obvious flaw—requires some background on the mortgage industry.

As alleged in the proposed complaint, plaintiffs' mortgages were collected into large pools held by trusts. The plaintiffs did not make loan payments directly to these trusts; instead, they made payments to their loan servicers, who in turn made payments to the trusts. The relationship between the loan servicers and the trusts was governed by separate contracts known as pooling and servicing agreements (PSAs), to which plaintiffs were not parties. The PSAs required the loan servicers to make advance payments to the trusts even if they had not yet collected payment from the borrowers.[5] Plaintiffs' theory is that these advance payments by the servicers were made "on behalf of" plaintiffs (the borrowers), satisfying plaintiffs' mortgage obligations even when plaintiffs made no payments on their loans.

---

[4] The proposed complaint identifies the trustee defendants as "Federal National Mortgage Association, a.k.a. FNMA and/or Fannie Mae, in its capacity as Trustee for various, as yet identified [sic] FNMA Trusts, Deutsche Bank National Trust Co., Wells Fargo Bank, N.A., U.S. Bank, N.A., MidFirst Bank, Doonan, Graves & Longoria, LLC, Orlans Moran, PLLC, Ablitt Scofield, and Harmon Law, P.C." Proposed Compl. ¶ 2.

[5] For Fannie Mae loans, the servicers submit advance payments to Fannie Mae, which in turn as "master servicer" makes up any remaining shortfall to the trust certificate holders.

The problem with plaintiffs' theory is that the servicers' advance payments were not made on behalf of plaintiffs. Instead, these payments are made pursuant to separate contractual obligations between the servicers and the trusts. The PSAs explicitly contemplate that the servicers' advance payments are not made on behalf of the borrowers, and that the borrowers may be in default despite these advance payments. See, e.g., Docket # 22 ("Fannie Mae Trust Agreement") § 6.1(2)(a)-(b) (distinguishing between payments "on behalf of Borrowers" and servicers' advance payments); id. § 5.1(4)(c) (borrowers are not third-party beneficiaries of servicing contracts); id. § 5.1(3)(b)(ix) (servicer is responsible for foreclosing on defaulted loans); id. § 5.11(1) (providing procedures for foreclosure upon default); Docket # 87, Ex. 1 ("Greenpoint PSA") §§ 3.01, 3.13, 6.05 (contemplating default despite servicer advance payments).[6] As such, plaintiffs' theory fails. See Casault v. Fed. Nat'l Mortg. Ass'n, CV 11-10520-DOC(RNBx), slip op. at 26-28 (C.D. Cal. Nov. 26, 2012) (considering the same legal theory and reaching the same conclusion).

Furthermore, the servicers' advance payments would only be considered to be "on behalf of" the plaintiffs if the servicers actually intended to extinguish the plaintiffs' repayment obligations. See 6A Anderson U.C.C. § 3-603:89 (West 2012); 60 Am. Jur. 2d Payment § 1 (West 2012). The proposed complaint gives no plausible reason to believe the servicers held that intent.

---

[6] The Fannie Mae Trust Agreement is incorporated into the proposed complaint by reference as Exhibit 11. The Greenpoint PSA is a PSA of the type referred to in the proposed complaint, whose terms are central to plaintiffs' claims; it was submitted by the trustee defendants in their request for judicial notice, and plaintiffs have not challenged its authenticity. These documents can therefore be considered on a motion to dismiss. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Plaintiffs concede they stopped making payments on their loans. The servicers' advance payments did not satisfy plaintiffs' repayment obligations; plaintiffs were therefore in default. The foreclosures thus did not violate Mass. Gen. Laws ch. 106, §§ 3-602 and -603, and plaintiffs' claims in Count 3 collapse.

Count 3 also apparently asserts a common-law negligence claim. That claim fails because neither a lender nor a loan servicer owes a common-law duty of care to a borrower. Young v. Wells Fargo Bank, Civil Action No. 11-10757-LTS, 2012 WL 734187, at *4 (D. Mass. Mar. 7, 2012); see Frappier, 645 F.3d at 58-59. Nor do the law firm defendants named in Count 3 owe a duty of care to their clients' adversaries. Manson v. GMAC Mortg., 283 F.R.D. 30, 42-43 (D. Mass. 2012); Lamare v. Basbanes, 418 Mass. 274 (1994).

### D.    Other Issues

Defendants' various motions raise several other flaws in the proposed complaint. Because the reasons described above are sufficient to require that leave to amend be denied, I do not address defendants' other arguments here.

## II.    Motion for Leave to Supplement

Plaintiffs have also filed a motion for leave to supplement their third amended complaint with further allegations derived from a separate qui tam lawsuit against Bank of America, N.A. Those further allegations do nothing to solve the problems identified above. Therefore, the motion for leave to supplement is also denied as futile.

## III.    Motions for Sanctions

Defendants Harmon Law Offices, PC, Ablitt Scofield, PC, and Doonan, Graves &

Longoria, LLC, three law firms named as defendants in Count 3, have moved for sanctions against plaintiffs' counsel. Their frustration is understandable, given the excessive length of the complaint and its implausible allegations. Although the decision is a close one, I am not convinced that sanctions are required. See United States v. Figueroa-Arenas, 292 F.3d 276, 279 (1st Cir. 2002) ("[A] judge should resort to [sanctions] only when reasonably necessary—and then with due circumspection.") The motions for sanctions will therefore be denied.

I note, however, that plaintiffs' counsel in this case is also counsel of record in three other related cases pending before me. The complaints in these pending cases appear to be based on allegations and on legal theories similar to the ones found deficient here. I urge plaintiffs' counsel to review those cases closely and to ensure that he is not pressing any claims foreclosed by this opinion.

## IV.  Conclusion

Plaintiffs first filed their complaint more than a year ago. As originally submitted, it covered more than 100 pages, with 500 numbered paragraphs. By the time plaintiffs had amended it twice, it had grown to 170 pages and 824 numbered paragraphs. Plaintiffs then conceded that they had failed to state any cognizable claim in those 170 pages. Now they seek leave to amend in order to enter a third amended complaint, filling 194 pages and a full 923 paragraphs. As described above, the third amended complaint still fails to state any claim, and so leave to amend must be denied.

Plaintiffs have been unable to plead any viable claim despite their extensive and repeated efforts. Their continued failure makes it abundantly clear that further attempts

at amendment would be equally fruitless.

Plaintiffs' motion for leave to amend (Docket # 126) and for leave to supplement (Docket # 166) are DENIED. Defendants' motions for sanctions (Docket ## 135, 144) are also DENIED. Judgment may be entered dismissing the action.


    January 10, 2013                              /s/Rya W. Zobel
        DATE                                    RYA W. ZOBEL
                                                    UNITED STATES DISTRICT JUDGE