# United States Court of Appeals
## For the First Circuit

No. 13-1209

HEANG OUCH, et al.,

Plaintiffs, Appellants,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a/k/a FNMA, a/k/a Fannie Mae, et al.,

Defendants-Appellees.

No. 13-1651

MORCOS H. HANNA, et al.,

Plaintiffs, Appellants,

v.

BAC HOME LOANS SERVICING, LP, et al.,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta, Circuit Judge,

and McCafferty,[*] District Judge.

---

Keven A. McKenna, with whom Todd S. Dion was on brief, for appellants.

Lawrence M. Kraus, with whom Geoffrey M. Raux and Foley & Lardner LLP, were on brief, for Federal National Mortgage Association, appellee.

Michael S. Kraut, Jeffrey W. Moss, and Morgan Lewis & Bockius LLP, on brief for U.S. Bank Home Mortgage, U.S. Bank National Association, and Deutsche Bank National Trust Company, appellees.

David B. Bergman, Elliott C. Mogul, and Arnold & Porter LLP, on brief for Barclays Capital Real Estate, Inc., appellee.

Maria R. Durant, Collora LLP, J. Kevin Snyder, James M. Golden, and Dykema, on brief for OneWest Bank, FSB, appellee.

Marissa I. Delinks, Maura K. McKelvey, and Hinshaw & Culbertson LLP, on brief for Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc., and Wells Fargo Bank, N.A., appellees.

Peter Obstler, and Arnold & Porter LLP, on brief for JPMorgan Chase Bank, N.A., appellee.

James W. McGarry, Thomas H. Good, and Goodwin Procter LLP, on brief for Countywide Financial Corporation, Countrywide Home Loans, Inc., Bank of America, N.A., in its own capacity and as successor by merger to BAC Home Loans Servicing, LP, and Wells Fargo Bank, N.A., appellees.

Morgan T. Nickerson, Jeffrey S. Patterson and Nelson Mullins Riley & Scarborough LLP, on brief for Wells Fargo Bank, N.A., America's Servicing Company, and Wachovia Mortgage Federal National Mortgage Association, appellees.

Bryan A. Fratkin, Jeffrey D. McMahan, Jr., and McGuire Woods LLP, on brief for Capital One, N.A., appellee.

Debra Bogo-Ernst, Mayer Brown LLP, Amy C. Mariani, and Fitzhugh & Mariani LLP, on brief for CitiMortgage, Inc., appellee.

Jeremy R. Bombard and Houser & Allison, APC, was on brief for Ocwen Loan Servicing, LLC, appellee.

---

August 24, 2015

---

[*] Of the District of New Hampshire, sitting by designation.

**HOWARD**, <u>Chief Judge</u>.  The appellants in these consolidated appeals, Heang Ouch and Morcos Hanna, seek to represent a putative class of borrowers who have not kept up with their mortgage loan payments.  Because of this delinquency, their loan servicers made a number of contractually-mandated advances of funds to the holders of the notes.  The borrowers now argue that, despite their own non-payment, the servicers' actions constituted payments on the borrowers' debts.  Accordingly, the borrowers insist that their mortgages were not in default and that the mortgage-holders lacked the power to foreclose.  We ultimately agree with the district court that the servicers' payments were not made "on behalf of" the borrowers.  This conclusion leads us to affirm the district court's rulings denying an amendment to Ouch's complaint and dismissing Hanna's complaint with prejudice.

I.

We briefly sketch the facts as drawn from plaintiff Ouch's proposed third amended complaint, plaintiff Hanna's complaint, and the documents incorporated therein.  <u>See</u> <u>Lister</u> v. <u>Bank of Am.</u>, 790 F.3d 20, 22 (1st Cir. 2015).

In order to obtain loans to purchase property, the borrowers signed notes and mortgages providing the mortgagees (i.e., the mortgage-holders) with the power to pursue non-judicial foreclosure in the event of a default.  <u>See</u> Mass. Gen. Laws ch. 244, § 14.  To facilitate securitization of the mortgages, a number

- 3 -

of financial institutions pooled the mortgages together and transferred them to a variety of trusts. In turn, investors purchased interests in these trusts in the form of mortgage-backed securities.

The trustees also entered into contractual agreements with a range of loan servicers. The servicers operated as the interface between the borrowers and the trustees. For instance, the borrowers paid the servicers, who then conveyed that money to the appropriate trustee. In the event of a borrower's non-payment, the servicers also agreed to make certain disbursements (dubbed "delinquency advances") to the trustees.[1]

Over time, the borrowers failed to make their mortgage payments. Accordingly, the servicers paid these delinquency advances to the trustees. The loan servicers also, as agents of the trustees (i.e., the holders of the mortgages and the associated notes), initiated foreclosure proceedings against the borrowers.

On behalf of a putative class of similarly situated borrowers, Ouch brought suit in the District of Massachusetts against the servicers, the trustees, the financial institutions

---

[1] The mechanics of these advances varied somewhat depending on whether the Federal National Mortgage Association ("FNMA" or "Fannie Mae") was involved. In those instances in which Fannie Mae played a role, a FNMA Trust Agreement applied. In other instances, a non-FNMA agreement governed. Moreover, where Fannie Mae was involved, the payments were referred to as "guaranty payments." As it has no substantive impact in this case, we simply refer to all of these payments as "delinquency advances."

involved in the mortgage-backed securities market, and the law firms representing those institutions that initiated the foreclosures. Invoking the Massachusetts Uniform Commercial Code ("UCC"), Ouch alleged that the servicers' delinquency advances constituted a payment of his loan, that he was therefore not in default, and, accordingly, that the defendants negligently foreclosed on his property. After twice amending his complaint, Ouch conceded that his pleadings were still legally deficient. He therefore sought leave to file a third amended complaint.[2] While that motion was pending, Hanna filed an analogous suit. The court stayed Hanna's case pending its decision on Ouch's motion.

The district court ultimately dismissed Ouch's second amended complaint and then denied the motion for leave to file the third amended complaint. The court reasoned that the proposed amendments failed to state a valid claim and thus the changes would have been futile. See Fed. R. Civ. P. 15(a)(2); Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009). After that decision, Hanna moved to voluntarily dismiss his complaint without prejudice. The court, drawing on the reasoning in the

---

[2] The borrowers do not focus on the other counts (or issues) presented in the proposed third amended complaint. We therefore bypass any discussion of them.

Ouch order, dismissed Hanna's complaint with prejudice. See Fed. R. Civ. P. 41(a)(2).

Ouch timely appealed from the judgment, challenging the denial of the motion for leave to amend the complaint. Hanna appealed the dismissal with prejudice. We consolidated the cases for briefing and argument.

**II.**

We typically review a district court's decision to deny a motion to amend a complaint for abuse of discretion. See Smith v. Jenkins, 732 F.3d 51, 75 (1st Cir. 2013). Here, however, the district court's decision was grounded on a pure question of law: whether the amended complaint stated a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). We review that question de novo, see Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996), and undertake the analysis as guided by Massachusetts law, see, e.g., Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013).[3]

The borrowers' primary contention is that the delinquency advances constituted payments on their debts such that

---

[3] As noted, the borrowers also challenge the district court's dismissal of the Hanna case. They do not, however, provide any independent argument as to why that dismissal with prejudice was inappropriate. Instead, they entirely tether the claim to their arguments respecting the denial of Ouch's motion. Our own review of the Hanna materials does not show a meaningful, substantive distinction between the two complaints. Our reasoning with respect to the Ouch case therefore applies with full force to Hanna.

their mortgages were not in default. Consequently, the borrowers claim that the trustees (or the servicers as agents of the trustees) lacked the ability to foreclose on the borrowers' homes. Nor, according to the borrowers, could the servicers foreclose in their own right, since they held neither the mortgages nor the notes. See Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1121 (Mass. 2012). Accordingly, the argument runs, the servicers negligently initiated foreclosure proceedings.

      This crafty contention hinges on whether the money that the servicers paid constituted "payment" on the borrowers' outstanding debts. The Massachusetts UCC informs that the answer would be yes if the payments were "made (i) by or on behalf of a party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument [i.e., the mortgagee]." Mass. Gen. Laws ch. 106, § 3-602 (emphasis added). Whether the servicers paid "on behalf of" the borrowers, in turn, depends on whether the servicers acted "with the intention to satisfy the debt." United States v. Isthmian Steamship Co., 359 U.S. 314, 318-19 (1959); accord 6A David Frisch, Lawrence Anderson on the Uniform Commercial Code, § 3-603:89 (3d ed.) ("Money received cannot be regarded as payment in discharge of a note unless the payment was made and received by the parties with the purpose of constituting payment of the note."); 60 Am. Jur. 2d Payment § 1 ("Payment requires delivery by the debtor and acceptance by the creditor, both with common

purpose."). Indeed, although the borrowers attempt to downplay the significance of the servicers' intent in making the payments, the Supreme Court observed long ago that "[w]hether the transfer of money or other thing shall operate as a payment, is ordinarily a matter which is determined by the intention of the parties to the transaction." Luckenbach v. W.J. McCahan Sugar Refining Co., 248 U.S. 139, 148 (1918) (rejecting the argument that an insurance company's "loan" to an insured operated as a payment).

The dispositive question then is whether Ouch's proposed amended complaint, coupled with its incorporated documents, plausibly suggests that the servicers intended that their "default advances" relieve the borrowers' debts. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Ouch's proposed amended complaint includes no allegations supporting such an intent. In fact, the documents submitted with Ouch's proposed complaint -- most notably, the FNMA Trust Agreement and the GreenPoint Mortgage Funding Trust 2006-AR3 (an example of a non-FNMA agreement) -- belie any plausible inference that the payments were done with an intent to pay the borrowers' debt. See Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 784 (1st Cir. 2011) (noting that under Massachusetts law the plain language of an agreement "is presumed to express the intent of the parties").

For example, the FNMA Trust Agreement could not be clearer on this score. It explicitly states that "[n]othing in

- 8 -

the Trust documents or the related Servicing Contract will cause any Holder or Borrower to become a third-party beneficiary of that Servicing Contract."  Indeed, the agreement acknowledges (over a dozen times) that a borrower's failure to pay the debt constitutes a "default" on the mortgage.  Such plain statements would alone seem to serve as a death knell for the borrowers' claims.  See Farmers Ins. Exch., 632 F.3d at 784.

But, there is more.  The FNMA Trust Agreement also provides remedies for the borrowers' non-payment.  These include: "having the Direct Servicers . . . pursu[e] a preforeclosure sale of the related Mortgaged Property or a deed-in-lieu of foreclosure," or "pursu[e] foreclosure."  Affording these remedies would be curious (perhaps outright bizarre) if the servicers' payments were intended to eradicate the borrowers' unpaid debt.  In short, nothing that we have found in the FNMA Trust Agreement supports the borrowers' theory.

The non-FNMA Trust Agreement paints the same picture.  That agreement, too, expressly considers a borrower's non-payment on the mortgage loan to constitute a default.  Moreover, like the FNMA agreement, the non-FNMA contract provides for a number of remedies (including foreclosure) to address a borrower's non-payment.  Again, nothing in the non-FNMA document suggests that the delinquency advances were somehow designed to pay off the borrowers' debt.

Given the plain language of these agreements -- coupled with the absence of any competing factual allegations -- the parties to the delinquency advances (the loan servicers and the trustees) unquestionably viewed them as temporary, stop-gap measures to keep principal and interest flowing to the trustees and the investors. Indeed, this is the only reading of these agreements that makes sense, given the realities of the mortgage-backed securities market and the mortgagees' concomitant need to keep ancillary fees on the property current. As to Ouch's proposed amended complaint (and, for the same reasons, as to Hanna's complaint), it is simply not plausible that the payments were intended to satisfy the underlying debt. The district court therefore did not err in concluding that the payments were not made "on behalf of" the borrowers.[4]

Given that result, the rest of the borrowers' argument falls like a house of cards. If the payments were not made on

---

[4] Although their argument is somewhat opaque, the borrowers also seem to believe that they can succeed under Mass. Gen. Laws ch. 106 § 3-603, in that the servicers purportedly had "an obligation" to pay the mortgage notes such that "the effect of tender" constituted payment on the debt. See id. (setting forth that "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract"). This theory, too, ultimately turns on whether the servicers entered into a legally-enforceable arrangement with the intent to pay off the mortgages. As discussed, no factual allegations in the complaint suggest that the servicers entered into such an agreement or that they did so with the requisite intent.

their behalf, then they were in default. And, with default, comes the ability for the mortgagees (or their agents) to foreclose on the borrowers' property.[5]

### III.

Finding the borrowers' arguments to be without merit, we **affirm** the district court's denial of the motion to amend the complaint in Ouch, and we **affirm** the district court's decision to dismiss Hanna with prejudice.

---

[5] The borrowers, for the first time on appeal, argue that the servicers acted as "guarantors" and that the "doctrines of surety, guaranty, and subrogation control[] over the issues." Since the borrowers did not present this theory below, it is waived. See U.S. ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 126 (1st Cir. 2013). It may, in fact, be doubly waived as the appellants at oral argument came perilously close to affirmatively abandoning the theory entirely. See, e.g., Fryar v. Curtis, 485 F.3d 179, 183 (1st Cir. 2007).